BOOTS, Appellant, v. NULL, et al, Respondents.

(238 N. W. 307.)

(File No. 6878. Opinion filed October 5, 1931.)

*Hagen & Hagen,* of Huron, for Appellant.

*T. H. Null,* of Huron, for Respondents.

PER CURIAM. Plaintiff brings this action for an accounting under a trust agreement hereinafter set out. The agreement is between defendant Null and A. C. Lowrie, and plaintiff claims as assignee of Lowrie. Prior to executing the agreement Lowrie

was defendant in an action wherein John F. Hoeck and Harry Gorton were plaintiffs seeking to recover approximately $6,000, and to have the amount adjudged a lien upon the north ten acres of the southwest quarter of the northwest quarter of section 12, township 110, range 62, in Beadle county, S. D., the premises covered by the trust agreement. The trust agreement was executed in settlement of that suit. T. H. Null was one of the attorneys for the plaintiffs. Following is the agreement:

"In consideration of the assignment by the defendant in the above entitled action, of the lease of the real property described in the complaint, the surrender of possession of said property, and defendant's consent that judgment may be entered in favor of the plaintiffs for the amount claimed in the complaint, together with costs and disbursements, such judgment to be decreed to be a lien against all of said property, subject only to the mortgage for $5,500.00 now of record against said property, the undersigned hereby accepts the trust created by this instrument and hereby promises and agrees that he will forthwith take an assignment of such judgment in his own name; that he will forthwith cause execution to issue upon said judgment and cause said property to be sold thereunder; that he will bid in said property in his own name for at least the full amount of said judgment, costs and disbursements and expenses of sale in trust for the parties interested therein; that he will procure a sheriff's deed for said property and hold said property in trust for purpose of carrying out the agreement and understanding of the parties to said action, that he will pay all taxes lawfully assessed and levied against said property before they become delinquent, pay interest on said mortgage when it becomes due, and all necessary expenses of caring for said property; that he will promptly collect all rents and profits arising from said property, and apply the same to the payment of said taxes, interest and expenses; that he will sell such property as soon as a fair and reasonable amount can be obtained therefor; that he will add to the proceeds of said sale, the amount of all rents and profits derived from said property, deduct from the amount so obtained all sums expended by him for taxes, interest, and necessary expenses, including a reasonable allowance as compensation for his services in executing this trust, and pay to the defendant one-third of the amount remaining after making such deduction.

"In the event that any one should redeem from the sale of said property under execution, the undersigned promises and agrees to pay to the defendant the sum of two thousand and no-hundredths dollars ($2,000.00).

"Dated at Huron, South Dakota, this 18th day of October, 1923.                                                    "T. H. Null."

Pursuant to this agreement Lowrie permitted judgment to be taken in the case, assigned the lease, surrendered possession of the property, and performed all things required of him in the settlement. Null took an assignment of the judgment, caused execution to issue, bid in the property, and finally obtained the property by sheriff's deed. He collected the rents and otherwise assumed to act under the agreement. He borrowed $3,000 of the defendant Union Bond & Mortgage Company,, and gave a mortgage on the premises. This is probably the reason for making the Union Bond & Mortgage Company a defendant, but the rights of this company are not in dispute. The issues are between plaintiff and Null. The first mortgage of $5,500 mentioned in the trust agreement was foreclosed in March, 1924, and sheriff's certificate of sale was issued to the mortgagee. Null afterwards bought the certificate of sale for $6,547.81 and obtained a sheriff's deed on this foreclosure on the 17th of June, 1925. By virtue of this deed Null now claims to be the absolute owner of the property. Judgment for defendants, and plaintiff appeals from the judgment and an order denying a new trial.

As one of the assignments of error appellant complains of the finding of the court "that the said A. C. Lowrie accepted said declaration with the fraudulent intent and purpose upon his part of placing his interest in said premises beyond the reach of his creditors; that this intent and purpose of the said A. C. Lowrie was unknown to the defendant, T. H. Null, at the time of making of said declaration." And as the conclusions of law and the judgment seem to depend largely upon this finding, we consider this assignment first. It is difficult to see how a debtor could accept property in fraud of his creditors. It may be the trial court thought that there was a conspiracy to defraud creditors in the settlement of the Hoeck and Gorton case against Lowrie, and that the suit and settlement was fictitious in fact and a mere device for

conveying the property to another to be held under a secret trust, but, if this is the idea, there is no evidence of such a transaction. There is nothing in the pleadings, proof, or contentions of the parties to this suit that the Hoeck and Gorton claim against Lowrie was not valid. If their claim was valid, there could be no fraud in Lowrie permitting judgment to be taken against him. If Lowrie could not pay the judgment or redeem from sale of his property, there could be no fraud in procuring some one who could save for him some part of the property that might otherwise be lost by a forced sale. Whatever he saved did not defraud his creditors. The findings and conclusions of law are based almost entirely on the theory that there is want of equity in this suit by reason of Lowrie's fraud. Appellant under the record and admitted facts is plainly entitled to an accounting. Mention is made in the conclusions of law of prior rights of the Security National Bank of Sioux Falls, S. D., but this bank is not a party to this action, and its rights cannot be determined herein. If the trustee has been or may be subjected to the payment of other paramount claims, he can be protected in the accounting. The rights of the Security National Bank are involved in a suit entitled Security National Bank v. Lowrie, 59 S. D. 102, 238 N. W. 304, wherein T. H. Null and J. H. Boots are named as garnishees. That case has been decided and the opinion filed simultaneously with the opinion in this case. Reference to that case may be had for a more detailed statement of facts.

The judgment and order appealed from are reversed.

POLLEY, P. J., and ROBERTS, WARREN, and RUDOLPH, JJ., concur.

CAMPBELL, J. (concurring specially). There are pending before us at the present time two cases involving to a considerable extent the same subject-matter, being the instant case and case No. 6879, Security National Bank v. Lowrie et al, 59 S. D. 102, 238 N. W. 304.

A chronological table of events in connection with these two cases is as follows:

April 17, 1919, Lowrie and his then co-owner gave a $5,500 mortgage on the real estate involved to one Wenzel.

February 25, 1920, Lowrie gave a contract for sale to Billington with whom were associated Hoeck and Gorton. Billington presently assigned his interests to Hoeck and Gorton. This contract was for the sale of the entire premises. After payments amounting to $5,000 were made Lowrie agreed with Hoeck and Gorton that if they would pay $700.66 more he would deed them two-thirds interest in the property, retaining one-third. This agreement apparently took the place of the contract to sell the whole property. Hoeck and Gorton paid the $700.66, but Lowrie did not convey the two-thirds interest to them, whereupon:

March 25, 1922, Hoeck and Gorton sued Lowrie for a rescission and to recover the payments of $5,700.66. During the course of this proceeding Gorton assigned all his interest to Hoeck. T. H. Null was attorney for Hoeck.

March 25, 1922, notice of lis pendens was duly filed in the above case of Hoeck and Gorton v. Lowrie.

July 7, 1922, judgment upon money demand was entered in favor of plaintiff for $6,159.71 in an action theretofore instituted wherein Security National Bank of Sioux Falls was plaintiff and Lowrie was defendant.

October 18, 1923, the "trust agreement" mentioned in the per curiam opinion in this cause was entered into.

October 18, 1923, judgment in the case of Hoeck v. Lowrie (lis pendens filed March 25, 1922) was entered in favor of plaintiff for $6,981.83 and was made a lien upon the entire premises subject to the first mortgage lien.

It is to be noted that at this stage of the proceedings legal title to the entire tract was in Lowrie, subject, first, to the first mortgage lien of $5,500; subject also to the lien of the Hoeck judgment for $6,981.83; and to the lien of the Security National Bank judgment for $6,159.71, with some possibility of question as to priority between the two liens last mentioned.

January 8, 1924, the Hoeck judgment was assigned to Null and the entire tract was sold upon execution under said judgment and bid in by Null for $7,115.36, the amount due on said judgment.

March 10, 1924, the property was sold in foreclosure of the first mortgage and bid in by Wenzel, the mortgagee, for $6,017.76.

July 24, 1924, Lowrie assigned all interest in the premises and all rights under the trust agreement to Boots, the admitted consid-

eration being satisfaction of an antecedent debt in the amount of $800.

January —, 1925, Null purchased the certificate of sale on foreclosure from Wenzel for $6,547.81, being the amount due thereon plus certain subsequent payments of interest, taxes, insurance, etc.

January 19, 1925, sheriff's deed issued to Null under the execution sale on the Hoeck judgment.

June 17, 1925, sheriff's deed issued to Null pursuant to the foreclosure sale under the Wenzel mortgage.

June 17, 1925, Null mortgaged the premises for $3,000 to Union Bond & Mortgage Company, whose rights under said mortgage are apparently conceded by all parties to both the present proceedings.

February 10, 1926, notice of lis pendens was filed and action was started in case No. 6878, Boots v. Null, wherein plaintiff Boots, claiming as assignee of Lowrie under the trust agreement, prayed that defendant Null as trustee be required to make an accounting as such trustee; that the premises be ordered sold; that a receiver be appointed to take charge of the property and make sale thereof; and that the proceeds be distributed to the persons thereto entitled.

February 24, 1926, garnishment process in aid of execution under the judgment acquired in July, 1922, by the Security National Bank against Lowrie was served upon Boots and Null, both of whom denied all liability. Issue was joined upon said disclosure in garnishment, and that proceeding between Security National Bank, judgment creditor of Lowrie, and Boots and Null, garnishees in aid of execution, constitutes case No. 6879, Security National Bank v. Lowrie et al, 59 S. D. 102, 238 N. W. 304.

February 16, 1928, judgment of dismissal was entered in case No. 6878, Boots v. Null, based upon conclusions of law as follows:

"I. That the Declaration of Trust was entered into and accepted by A. C. Lowrie with intent upon his part to cheat, wrong and defraud his creditors, and is void as against his creditors. That the plaintiff, as assignee of said A. C. Lowrie, is not entitled to enforce said Trust Agreement.

"II. That under the terms of said Declaration of Trust no interest in the land was reserved to or vested in said A. C. Lowrie,

and the only obligation imposed upon the Trustee was that the Trustee should account to said A. C. Lowrie when the land was sold.

"III.   That the land, not having been sold, no right of action exists in favor of A. C. Lowrie or his assignee, J. H. Boots, against the Trustee for an accounting.

"IV.   That the Notice of Lis Pendens in the suit of Hoeck et al and A. C. Lowrie, having been filed and recorded in the office of the Register of Deeds in and for Beadle County, South Dakota, prior to the entry of the Judgment in the suit of Security National Bank v. A. C. Lowrie, the said judgment is inferior to the Decree entered in the Hoeck suit, and was foreclosed out by the Sheriff's sale under the Decree in the Hoeck suit, and the judgment in favor of the Security National Bank v. A. C. Lowrie, is no longer a lien on the premises involved herein.

"V.   That by reason of the said Declaration of Trust being entered into and accepted by A. C. Lowrie with intent to defraud his creditors, the said Security National Bank is entitled to equitable lien on whatever funds may on accounting be found due from the Trustee under the terms of said Declaration of Trust.

"VI.   That the rights of the Security National Bank under said judgment are superior to any claim of the said A. C. Lowrie, or of his assignee, J. H. Boots.

"VII.   That a full accounting by the Trustee may be made in the garnishment proceedings in aid of execution on the judgment of the Security National Bank vs. A. C. Lowrie."

February 20, 1928, in the garnishment case, No. 6879, the court made findings of fact, and therefrom concluded, as a matter of law, that Null was the owner of a two-thirds interest in said land, free of any lien of the Security Bank judgment. That the Security Bank judgment was a lien on a one-third interest in the land subject to a prior lien for $1,282.42 in favor of Null for a proportionate share of advances made by him. That the trust agreement between Lowrie and Null was fraudulent and void as to plaintiff Security Bank. That the transfer from Lowrie to Boots was null, void, and fraudulent as to plaintiff bank, and that the judgment lien of plaintiff in the premises is prior to any right or interest of Boots therein. That the undivided one-third

interest in the premises should be sold by the sheriff of Beadle county subject to the lien of Null for $1,282.40, and that the proceeds of sale should be applied, first, to costs and expenses; second, to costs and disbursements of plaintiff in the garnishment proceeding; third, to the satisfaction of plaintiff's judgment of $6,112.41 in aid of which garnishment issued; fourth, the surplus, if any, to be paid to the clerk of courts and to be disbursed by him; first, in payment of Null's lien of $1,282.40; and, second, if any balance or surplus remain, to be held by the clerk subject to the further order and judgment of the court."

Cases Nos. 6878 and 6879 were heard before the same judge below. Although the cases were separate, it is manifest that he considered them together, but upon utterly inconsistent theories. He decided case No. 6878 on the ground that no interest of any sort in realty, legal or equitable, was vested in Lowrie by the terms of the trust agreement after Null acquired the legal title to the land. He then decided case No. 6879 on the theory that Lowrie was at all times the owner (presumably equitable) of an undivided one-third interest in this land, and that the lien of the judgment of the Security Bank against Lowrie attached to Lowrie's one-third equitable interest, and he proceeds to order sale of said real estate for the satisfaction of said lien.

So far as concerns the instant case, No. 6878, the only parties involved are Null, the trustee, and Boots, as successor in interest to Lowrie. I do not think it makes any difference in this case what Lowrie's intention or purpose was when he made the trust agreement. The fact, if it be a fact, that when Lowrie entered into that scheme he did it to conceal property from creditors, does not in any manner, in or of itself, excuse the trustee from performance of his trust or from a proper accounting thereof to Lowrie or Lowrie's successor in interest. As between Lowrie or his successor in interest and the trustee, the trust should be performed according to its terms, and certainly the trustee by taking over the title originating in foreclosure of the 1919 mortgage could not thereby set up a new and independent title in himself adverse to his trust. If, by reason of the fraudulent character of the trust transaction on Lowrie's part or otherwise, creditors of Lowrie have established claims or lien upon the property which prevent the performance of the trust, that may be an excuse pro tanto for the trustee's

nonperformance, but it is the duty of the trustee to plead, prove, and establish that defense when Lowrie or Lowrie's successor in interest proceeds against the trustee for the enforcement of the trust agreement as was done in case No. 6878, and the court cannot in that case, without pleading or proof, take judicial notice of other independent proceedings pending in the same court. Grace v. Ballou, 4 S. D. 333, 56 N. W. 1075; Schreier v. Veglahn, 56 S. D. 125, 227 N. W. 487.

It rather looks to me that to make any satisfactory disposition of these two cases it will be necessary for the trial court to determine the legal effect of the so-called "trust agreement" of October, 1923. As the cases now stand the learned trial judge has held in case No. 6878 that Lowrie had no interest in realty by virtue thereof, while he has held in case No. 6879 that Lowrie did have an undivided one-third interest in realty by virtue thereof, and undertaken to foreclose a judgment lien thereon.

Lowrie did not transfer any interest in real estate under this trust agreement. He simply assigned a lease and surrendered possession and consented to the entry of a judgment. Null as trustee acquired the real estate by virtue of execution sale and foreclosure sale. An important question is, When Null had thus acquired legal title to the realty did Lowrie, by virtue of the trust agreement, have an equitable interest therein? Lowrie's legal title to this real estate was utterly divested by the execution sale and by the foreclosure sale. If he had any interest in the realty thereafter, such interest arose by virtue of the trust agreement and arose the moment that Null acquired the legal title. Before the execution sale and foreclosure sale, Security Bank, by virtue of its judgment of July, 1922, had a lien upon this real estate. That lien was doubtless divested by the execution sale and by the foreclosure sale, being probably junior both to the Hoeck judgment and to the original mortgage. However, if by virtue of the trust agreement, when Null acquired legal title by these sales, an undivided one-third equitable interest therein was vested in Lowrie, then it may well be argued that at that moment pursuant to the rule established by this court in Fridley v. Munson, 46 S. D. 532, 194 N. W. 840, 30 A. L. R. 501, the lien of the Security Bank judgment attached to that one-third equitable interest, and in that event it would be prior to any claim of Boots. The Boots assignment from Lowrie was

not made until July 24, 1924, after Null had bid in the land upon execution sale. If Lowrie at that time had a one-third equitable interest in the land which his assignment passed to Boots, it was subject to the lien of the Security Bank judgment, and Boots took it so subject.

On the other hand, if by virtue of the trust agreement Lowrie did not in fact have any equitable interest in realty, but had merely a contract right to have certain acts performed and things done by Null, then the lien of the Security Bank divested by execution, and foreclosure sales did not thereafter attach to the realty, and there is now no lien upon the realty. Lowrie's contract right against Null under the trust agreement would be a valuable right which could be reached by his creditors under proper proceedings, but it would not be a right to which any judgment lien would attach, and the existence of that contract right with reference to realty would not give any judgment lien in favor of creditors upon the realty. See American National Bank v. Groft, 56 S. D. 460, 229 N. W. 376. If that is the situation, then the thing that passed from Lowrie to Boots by the assignment in 1924 was merely personal property, a chose in action, a contract right. In that event such contract right being personal property is not subject to a lien of a judgment, and it passed from Lowrie to Boots unaffected by any liens and free of any claims of Lowrie's then judgment creditors, excepting in so far only as those creditors may be able to establish in the manner and form provided by law that the transfer of such personal property, to wit, the contract right, from Lowrie to Boots was fraudulent as against creditors under the provisions of chapter 209, Laws 1919.

It seems to me that the trial court must ultimately deal with and determine a number of the matters suggested above in order to dispose of these two cases, and it ought to be possible to consolidate the two cases in some manner or other in such fashion as to permit disposition of all of these questions and the adjudication of the rights of all parties in one proceeding.

Upon the foregoing considerations, I concur in the reversal of the judgment and order appealed from.