1997 SD 31

AGAR SCHOOL DISTRICT NO. 58–1 and Agar Board of Education, Agar, South Dakota; John Bush, Joan Bush, Jeff Bush, Jerry Bush, Carol Bush and Tom Asmussen of Pierre, South Dakota; Stanley Asmussen, W.J. Asmussen, Ted Asmussen, Vernon Brandt, Mike Mikkelsen, Craig Mundt, Curt Mundt and Lewis Robbennolt of Agar, South Dakota; and Marion Schreiber of Gettysburg, South Dakota, Petitioners and Appellees,

v.

Patty McGEE, Sully County Auditor; Edna M. Brunmeier, Sully County Treasurer and Sully Buttes School District, Appellants,

and

Pierre School District and Gettysburg School District, Respondents.

No. 19593.

Supreme Court of South Dakota.

Argued Sept. 12, 1996.

On Reassignment Dec. 16, 1996.

Decided March 26, 1997.

Rehearing Denied April 30, 1997.

*Id.* (emphasis added).

Mark A. Moreno and Cheryl Schrempp Dupris of Schmidt, Schroyer, Moreno & Dupris, Pierre, for petitioners and appellees.

Darla Pollman Rogers, Sully County State's attorney, Onida, for appellants McGee and Brunmeier.

Patricia A. Meyers and Dennis H. Hill of Costello, Porter, Hill, Heisterkamp and Bushnell, Rapid City, for appellant Sully Buttes School Dist.

GILBERTSON, Justice (on reassignment).

[¶ 1.] Sully County Auditor Patty McGee, Sully County Treasurer Edna M. Brunmeier, and the Sully Buttes School District (collectively referred to as County and School District) appeal the circuit court's decision finding Agar School District No. 58-1 (Agar) operated a high school prior to July 1, 1993, ordering a refund of taxes collected pursuant to SDCL 13–15–14.2, and awarding Taxpayers costs and disbursements. County and School District dispute the circuit court's de- termination that Agar operated a high school within the required time so as to avoid the tax adjustment requirement of SDCL 13–15–14.2. They further contend that even if Agar operated a high school during the relevant period, the trial court was without authority to refund any taxes collected. County and School District also appeal the costs and disbursements awarded to Taxpayers. We reverse.

## FACTS AND PROCEDURE

[¶ 2.] In 1984, because of decreased enrollment, Agar closed its high school and contracted with Pierre, Gettysburg and Sully Buttes School Districts to provide education for Agar high school students. SDCL 13–15–1.3 and 13–15–11. Under this arrangement, Agar high school students attended one of these school districts and Agar paid a tuition stipend to that district.

[¶ 3.] In 1988, Agar hired George R. Levin (Levin) as superintendent of the school district. Shortly thereafter, the South Dakota Legislature enacted SDCL 13–15–14.2 which provided:

> Any school district that enters into contractual agreements pursuant to § 13–15–11 or 13–15–1.3 for the first time after July 1, 1989, shall within four years of the commencement of the contractual agreement, operate an elementary school and a secondary school within the boundary of the school district or reorganize the school district pursuant to chapter 13–6.

1989 SDSessL ch. 145. Though not affected by the enactment because Agar first entered into contractual agreements to educate its students prior to July 1, 1989, Levin and the Agar School Board began discussing plans to reopen Agar High School. The proposed high school emphasized rural economic development and a college preparatory curriculum. Levin conducted community informational meetings and contacted the Department of Education and Cultural Affairs (DECA) concerning the proposed high school to garner support for the reopening efforts.

[¶ 4.] In 1990, the Legislature amended SDCL 13–15–14.2 to include districts that

entered into contractual agreements pursuant to SDCL 13–15–1.3 or 13–15–11 before July 1, 1989, among those required to operate an elementary and secondary school within the school district or reorganize within three years of July 1990.[1] In response, Levin and the Agar School Board increased their efforts to reopen the high school. Additional informational meetings were held, a high school teacher was hired to prepare curriculum and discussions with University of South Dakota personnel commenced concerning the rural economic development focus of the high school.

[¶ 5.] SDCL 13–15–14.2 was amended again in 1991 SDSessL ch. 137 § 1.[2] This amendment required school districts that entered contractual agreements before July 1, 1989 to operate an elementary and secondary school within the district, reorganize the school district or adjust its taxation pursuant to SDCL 13–11–9 to –11, inclusive, within three years of July 1, 1990. To comply with this statutory amendment, Levin and the Agar School Board attempted to finalize the planned high school. In August of 1991, Agar's business manager submitted a Notice of Tax Budget to Sully County Auditor McGee requesting a tax levy of $620,420 in taxes for the 1992–93 school year. The budget request included approximately $128,000 for the operation of the high school. McGee prepared the mill levy forms based on Agar's tax request and submitted them to the Department of Revenue. After having been informed there was no reason to adjust the taxes, McGee collected them.

[¶ 6.] By July 1, 1992, Agar had purchased computers, textbooks and supplies, hired Levin to serve as principal, hired four faculty members, put a curriculum in place and employed a faculty to teach high school students. Agar claims the high school was operational and prepared to educate students during the 1992–93 school year. Agar high school students, however, had a choice whether to attend Agar High School or one of the schools with whom Agar contracted. No students chose to attend Agar High School during the 1992–93 school year.

[¶ 7.] In November 1992, a DECA accreditation team performed an on-site review of Agar. The purpose of the team's review was to evaluate the K–8 program. During the review, the accreditation team also toured the high school, was informed that high school teachers were under contract, discussed the high school curriculum and budget, and was made aware of Agar's intention to reopen its high school. On June 1, 1993, DECA issued a Certificate of Accreditation to the "Agar School District" for the 1993–94 school year through the 1996–97 school year. However, when Agar attempted to join the South Dakota Activities Association, questions arose as to whether the high school was accredited. On August 1, 1993, DECA issued Agar High School a provisional Certificate of Accreditation.

[¶ 8.] In the fall of 1993, Agar's School Board adopted its 1993–94 budget. A budget request of $637,172.32 was made to McGee. The Department of Revenue rejected the tax

---

**1.** The amendment provided:

Any school district that enters into contractual agreements pursuant to § 13–15–1.3 or 13–15–11 for the first time after July 1, 1989, shall within four years of commencement of the contractual agreement, operate an elementary school and a secondary school within the boundary of the school district or reorganize the school district pursuant to chapter 13–6. Any school district that entered into a contractual agreement pursuant to § 13–15–1.3 before July 1, 1989, shall within three years of July 1, 1990, operate an elementary school and a secondary school within the boundary of the school district or reorganize the school district pursuant to chapter 13–6.
1990 SDSessL ch. 123.

**2.** The amendment provided:

Any school district that enters into contractual agreements pursuant to § 13–15–1.3 or 13–15–11 for the first time after July 1, 1989, shall within four years of commencement of the contractual agreement, operate an elementary school and a secondary school within the boundary of the school district, reorganize the school district pursuant to chapter 13–6 or adjust its taxation pursuant to §§ 13–11–9 to 13–11–11, inclusive. Any school district that entered into a contractual agreement pursuant to § 13–15–1.3 before July 1, 1989, shall within three years of July 1, 1990, operate an elementary school and a secondary school within the boundary of the school district, reorganize the school district pursuant to chapter 13–6 or adjust its taxation pursuant to §§ 13–11–9 to 13–11–11, inclusive.

levy request and instructed McGee to calculate the tax levy pursuant to SDCL 13–11–9 to –11 as provided in SDCL 13–15–14.2. McGee's recalculation of the tax levy resulted in a recalculated amount of $1,067,123.79, $429,951.47 more than requested by the Agar School Board. McGee began collecting the tax and informed the Agar School Board it would not receive any of the funds raised by the adjusted tax levy. The collected funds were paid to Pierre, Gettysburg, and Sully Buttes school districts.

[¶ 9.] Agar, Agar School Board, and various Agar Taxpayers filed suit against the Sully County Auditor, Sully County Treasurer, Pierre School District, Gettysburg School District and Sully Buttes School District, asking the circuit court to declare the adjusted tax levy void and prohibit the collection of same. The circuit court dismissed the case and we reversed and remanded for a determination of whether Agar was operating a high school. *Agar School Dist. v. McGee*, 527 N.W.2d 282, 289 (S.D.1995) (*Agar I* ). Pierre School District and Gettysburg School District entered into settlement agreements with Taxpayers prior to the remanded trial. On remand, the circuit court found Agar operated a high school within the required time. The circuit court held the adjusted tax levy was illegal and ordered a refund of the collected tax. The circuit court also awarded Taxpayers $6,279.68 in costs and disbursements. County and School District appeal the following issues:

1. Whether Agar School District was operating a high school within the boundaries of the district on July 1, 1993?

2. Whether the circuit court had jurisdiction in a declaratory judgment action to order a refund of property taxes to both parties and non-parties?

3. Whether Taxpayers were entitled to costs and disbursements?

## STANDARD OF REVIEW

[¶ 10.] We recently set forth our standard of review of declaratory judgment actions. "In [review of] declaratory judgment actions, this Court 'has an obligation to reach its legal conclusions independent from the conclusions reached by the trial court.' "

*Black Hills Novelty Co. v. S.D. Comm'n on Gaming*, 520 N.W.2d 70, 72 (S.D.1994) (*quoting Northwestern Bell Telephone v. Stofferahn*, 461 N.W.2d 129, 134 (S.D. 1990)). Thus, we review these questions of law de novo. *Id.* (citing *In re SDDS, Inc.*, 472 N.W.2d 502, 507 (S.D.1991); *Permann v. Department of Labor*, 411 N.W.2d 113, 117 (S.D.1987)).

*Reis v. Miller*, 1996 SD 75, ¶ 5, 550 N.W.2d 78, 79–80.

## ANALYSIS

**Whether the circuit court had jurisdiction in a declaratory judgment action to order a refund of property taxes to both parties and non-parties?**

[¶ 11.] We review this issue first, finding it dispositive of the other issues in this appeal. We address the application of the declaratory judgment statutes to the parties and to non-parties separately.

[¶ 12.] Following its determination that Agar was operating a high school within three years of July 1, 1990, the circuit court ordered a refund of the property taxes collected pursuant to SDCL 21–24–12. This statute provides:

Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice require any adverse party whose rights have been adjudicated by the declaratory judgment or decree to show cause why further relief should not be granted forthwith.

County and School District contend the circuit court lacked jurisdiction to order the refund.

[¶ 13.] **1. Application of SDCL Ch. 21– 24 to the parties to this action.**

[¶ 14.] This State's declaratory judgment statutes were enacted in 1925. SDCL Ch. 21–24. Yet in *Security Nat'l Bank v. Twinde*, 52 S.D. 352, 355, 217 N.W. 542, 543 (1928), this Court held "[u]nder the statutes

of this state two different courses are open to a taxpayer for the recovery of taxes paid, which he claims should not have been charged against him," that being SDCL 10–18–1 and SDCL 10–27–1.[3] This has consistently been held to be the law in this state. *See Dakota Lodge No. 1, IOOF v. Yankton County*, 56 S.D. 234, 237, 228 N.W. 238, 239–40 (1929); *Holbrook v. Gallagher*, 56 S.D. 54, 56, 227 N.W. 461, 462 (1929); *Yusten v. Morrison*, 78 S.D. 426, 429, 103 N.W.2d 653, 655 (1960). In *Chicago, Milwaukee, St. Paul & Pac. R.R. Co. v. Bd. of Comm'rs*, 248 N.W.2d 386, 389 (S.D.1976), we held:

> One remedy excepted from the protest and suit statute [SDCL 10–27–1] is the refund and abatement statutes found in SDCL 10–18–1 and SDCL 10–18–2 as provided in SDCL 10–18–12. *There is no other statutory remedy which the code expressly excepts from this statute.* (emphasis added) (citations omitted)

In *Lick v. Dahl*, 285 N.W.2d 594, 599 (S.D. 1979), this Court unanimously held:

> There are two *exclusive* methods by which an aggrieved taxpayer may seek recovery for alleged illegal taxes paid. They are the Refund and Abatement Statute, SDCL 10–18–1, and the Protest and Suit Statute, SDCL 10–27–2. (emphasis added)

Recently in discussing the scope of SDCL 10–27–2, we stated that "[w]hile we agree that this does indeed place an additional burden on a taxpayer seeking recovery and repayment of overpaid taxes, we do not believe that the statutes provide for any other remedy." *Riverview Prop. v. Bd. of Equalization*, 439 N.W.2d 820, 823 (S.D.1989).

[¶ 15.] Non-refund taxpayer cases have been similarly construed by this Court. Only two years ago, in *Weger v. Pennington County*, 534 N.W.2d 854 (S.D.1995), the appellant taxpayer argued he could bring a declaratory judgment action against Pennington County challenging the legality of appointments to

---

3. SDCL 10–18–1, the refund and abatement statute, presently provides:

Unless otherwise expressly provided, if any person, against whom an assessment has been made or a tax levied, claims such assessment or tax or any part thereof to be invalid for any reason herein stated, the same may be abated, or the tax refunded if paid, and the board of county commissioners is authorized and empowered to abate or refund, in whole or in part, such invalid assessments or taxes in the manner hereinafter prescribed and in the following cases only:

(1) When an error has been made in any identifying entry or description of the property, in entering the valuation thereof or in the extension of the tax, to the injury of the complainant;

(2) When improvements on any real property were considered or included in the valuation thereof, which did not exist thereon at the time fixed by law for making the assessment;

(3) When the complainant or the property is exempt from the tax;

(4) When the complainant had no taxable interest in the property assessed against him at the time fixed by law for making the assessments;

(5) When taxes have been erroneously paid or error made in noting payment or issuing receipt therefor;

(6) When the same property has been assessed against the complainant more than once in the same year, and the complainant produces satisfactory evidence that the tax thereon for such year has been paid; provided that no tax shall be abated on any real property which has been

sold for taxes, while a tax certificate is outstanding.

SDCL 10–27–1, the protest and suit statute, currently provides:

No injunction to restrain or delay the collection of any tax claimed to be due shall be issued by any court, but in all cases in which, for any reason, it shall be claimed that any tax about to be collected is wrongful or illegal, in whole or in part, the remedy, except as otherwise expressly provided by this code, shall be by payment under protest and action to recover, as provided in § 10–27–2.

SDCL 10–27–2, outlining the procedure for protest and suit under 10–27–1, provides:

Any person against whom any tax is levied or who may be required to pay the tax, who pays the tax prior to the tax becoming delinquent and under protest to the treasurer authorized to collect the tax, giving notice at the time of payment of the reasons for such protest may, at any time within thirty days thereafter, commence an action against such treasurer for the recovery of the tax in any court of competent jurisdiction. If the court determines that the tax was wrongfully collected, in whole or in part, for any reason going to the merits of the tax, the court shall enter judgment accordingly, and such judgment shall be paid in preference to any other claim against the county, upon the final determination of the action. A pro rata share of the money so refunded shall be charged to the state and each taxing district which may have received any part of the tax. The right of appeal shall exist for both parties as in other civil actions.

the air quality board. In ruling no declaratory judgment cause of action existed, we held:

> Our prior holdings on taxpayer actions 'stand for the proposition that where there is a remedy by appeal, that remedy must be followed, rather than actions in equity or at common law.' *Simpson* [*v. Tobin*, 367 N.W.2d 757 (S.D.1985) ], 367 N.W.2d at 761. SDCL 7–8–28 offers Weger a remedy by appeal and in *Barnum* [*v. Ewing*, 53 S.D. 47, 220 N.W. 135 (1928) ] we declared it the exclusive remedy; therefore, an action in equity for declaratory judgment is not available to Weger. This result is consistent with prior case law and with SDCL 7–8–32's exclusivity provision.[4]

*Id.* at 859. We concluded that, "[i]t is only in cases where the appeal statutes of SDCL 7–8 could not give the requested remedy, that they are not considered to be an *exclusive remedy*." *Id.* at 858 (emphasis added).

[¶ 16.] *Arneson v. Baker*, 76 S.D. 262, 77 N.W.2d 325 (1956), cannot support the Taxpayers' position. That case is limited to its facts as there the tax had been paid by the plaintiffs, "with the court approved provision for ultimate disposition of the disputed portion according to the judgment of the trial court." *Id.* at 264, 326. The issue was limited to the legality of the tax and not the question of refunds.

[¶ 17.] If the holding in *Arneson* is expanded beyond this interpretation, then *Arneson* is overruled by *Lick*, for factually the two cases are indistinguishable.[5] In both cases landowners had their assessments raised by the county commissioners without the required statutory notice. In both cases the taxpayers were willing to pay the tax based on the original assessment notice they received but not the increase for which they received no notification. If *Arneson* is now to be considered as authority for the proposition that in such fact situations a declaratory judgment is appropriate, then it is overruled

by *Lick's* express holding that SDCL 10–18–1 and SDCL 10–27–2 are exclusive taxpayer recovery remedies.

### [¶ 18.] 2. Application of SDCL Ch. 21–24 to non-party taxpayers.

[¶ 19.] Beyond the above analysis, the terms of SDCL 21–24–12 cannot be relied upon as authority to uphold the refund en mass to non-party taxpayers of the district. SDCL 21–24–12 provides, in relevant part that "[i]f the application [for further relief based on a declaratory judgment or decree] be deemed sufficient, the court shall, on reasonable notice require *any adverse party whose rights have been adjudicated by the declaratory judgment or decree* to show cause why further relief should not be granted forthwith. (emphasis added). Thus, the statute limits its scope to parties to the action. Any further doubt on the issue is dispelled by SDCL 21–24–7. It provides:

> When declaratory relief is sought *all persons shall be made parties who have or claim any interest which would be affected by the declaration*, and no declaration shall prejudice the rights of persons not parties to the proceeding. (emphasis added)

Thus, even if the circuit court had been correct in determining that the declaratory judgment chapter empowers a circuit court to order a refund, it would only be authorized to do so to parties to the action. *Cf. Boots v. Null*, 59 S.D. 109, 112, 238 N.W. 307, 309 (1931) (noting that when a person "is not a party to [an] action, [his] rights cannot be determined" therein). Herein the circuit court did not follow SDCL 21–24–7 and make the remaining taxpayers of the school district parties to the action.

[¶ 20.] As noted above, *Lick* determined that the two exclusive tax recovery statutes did not authorize a class action for recovery of improperly assessed taxes. *Lick*, 285 N.W.2d at 600. The analysis employed in

---

4. SDCL 7–8–32 provides in part: "[a]ppeal to the circuit court from decisions of the board of county commissioners, as provided in this chapter, is an exclusive remedy." Compare it with the language of SDCL 10–27–1 which provides in part, "but in all cases in which, for any reason, it shall be claimed that any tax about to be collected is wrongful or illegal, in whole or in part, the remedy, except as otherwise expressly provided

by this code, shall be by payment under protest and action to recover, as provided in § 10–27–2."

5. *Arneson* would also be overruled by *Yusten; Chicago, Milwaukee, St. Paul & Pac. R.R. Co.; Riverview;* and *Weger.*

*Lick* further shows that the declaratory judgment statutes cannot be used to order refunds to every non-party taxpayer in the Agar School District.

[¶ 21.] The *Lick* Court held that the tax recovery statutes spoke in terms of a "person" seeking a tax refund to be in the singular. *Id.* at 599. The definition it used for a "person" is very similar to the definition that is found in the declaratory judgment chapter at SDCL 21–24–2.[6] *Id.* at 600. The *Lick* Court held that in order to allow recovery by more than a taxpayer who was a party to the suit, the statute must "expressly" so provide. *Id.* Such express authorization was not located in the applicable class action statutes.

[¶ 22.] Even *Arneson* supports the proposition that here the circuit court did not have the authority to order refunds to non-party taxpayers, as the determination of the legality of the tax allowed the:

> speedy determination of such questions as are here involved without any interruption of the collection processes, *and in a manner which would permit the joinder in interest of many plaintiffs who might otherwise, however much aggrieved, be individually unable to secure review of such questions.*

77 N.W.2d at 327 (emphasis added).

## CONCLUSION

[¶ 23.] A refund of taxes is an extraordinary remedy available only under narrowly defined circumstances. *Fiman v. Hughes County*, 55 S.D. 204, 207, 225 N.W. 711, 713 (1929). The purpose for the strict limitations on tax refunds is " 'to permit taxing districts which have made levies for their needs to receive the contemplated revenue whereby they will not be crippled in operation....' " *Riverview*, 439 N.W.2d at 823 (quoting *Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 248 N.W.2d at 389–90). Thus, the appropriate remedy for taxpayer recovery of alleged illegally collected taxes must be balanced against the necessity of a governmental unit to secure necessary funding to be able to accomplish its statutory tasks for the benefit of its citizens. Striking the proper balance between these two competing interests is the domain of the Legislature and not this Court. *Weger*, 534 N.W.2d at 858. "As much as we sympathize with [the taxpayer] and recognize what appears to be a manifest unfairness, it is not within our ability or role to fashion a remedy. That is within the exclusive province of the legislature." *Riverview*, 439 N.W.2d at 823.

[¶ 24.] Accordingly, *Agar I*, 527 N.W.2d 282, should be modified to conform to this decision and to our prior case law cited herein.

[¶ 25.] We reverse the circuit court's order of a refund of the collected tax.

[¶ 26.] As there is no right to a refund of taxes paid in this case, we need not reach Issue 1 as it becomes moot.

[¶ 27.] As to Issue 3 regarding costs and disbursements, the respondents do not prevail for the reasons set forth above. As such they are not entitled to costs and disbursements. SDCL 15–17–37.

[¶ 28.] AMUNDSON and KONENKAMP, JJ., concur.

[¶ 29.] MILLER, C.J., and SABERS, J., dissent.

MILLER, Chief Justice (dissenting).

[¶ 30.] I dissent. A declaratory judgment action is a recognized method for seeking a refund of an illegal tax. Our holdings in *Arneson v. Baker*, 76 S.D. 262, 266, 77 N.W.2d 325, 326–27 (1956), and *Agar School Dist. No. 58–1 v. McGee*, 527 N.W.2d 282, 286–87 (S.D.1995) (*Agar I*), expanded the narrow circumstances in which a tax refund may be allowed to include not only the exclusive statutory methods provided by the protest and suit statute, SDCL 10–27–1, and the refund and abatement statutes, SDCL 10–18–1 and –2, but also to include declaratory

---

6.  SDCL 21–24–2 provides:
    The word 'person' wherever used in this chapter shall be construed to mean any person, partnership, joint stock company, unincorporated association or society, or municipal, public or other corporation of any character whatsoever.
    At the time *Lick* was decided, SDCL 2–14–2(16) provided that: 'person' includes natural persons, partnerships, associations and corporations.

judgment actions. The inclusion of declaratory judgment actions as a method to refund an illegal tax is consistent with public policy supporting strict limitations on tax refunds. *See Agar I,* 527 N.W.2d at 287(noting declaratory relief "does not hinder tax collections"); *Fiman v. Hughes County,* 55 S.D. 204, 206, 225 N.W. 711, 713 (1929) (stating "[t]he general rule [is] that taxes are to be refunded in exceptional cases and under circumstances which render the repayment equitable.").

[¶ 31.] Furthermore, a declaratory judgment action was expressly sanctioned by this Court under the facts of this case. In *Agar I,* we held as a matter of law that "a declaratory judgment action is a meaningful alternative to payment under protest statutes" and specifically remanded the matter for additional proceedings. 527 N.W.2d at 287–89. A question which has been decided on a former appeal is the law of the case and must be followed in all subsequent proceedings concerning the litigation. *Western States Land & Cattle Co., Inc. v. Lexington Insurance Co.,* 459 N.W.2d 429, 435 (S.D.1990); *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251, 260 (S.D.1976). "[W]e will not decide the same issue anew or on appeal after remand." *First Western Bank, Sturgis v. Livestock Yards Co.,* 466 N.W.2d 853, 858 (S.D.1991). Accordingly, we are bound by our holding in *Agar I* that a declaratory judgment action is an available remedy for Taxpayers. *See American State Bank v. List–Mayer,* 350 N.W.2d 44, 46 (S.D.1984); *Gamble v. Keyes,* 49 S.D. 39, 43, 206 N.W. 477, 478 (1925).

[¶ 32.] The grant of declaratory relief pursuant to SDCL 21–24–12 allows relief to be granted "whenever necessary and proper" within the discretion of the court. Given the availability of the collected taxes, the fact Sully Buttes School District did not rely on the collected taxes, and the windfall that Sully Buttes would receive as a result of the illegally collected tax, the trial court's refund of the illegal tax to all taxpayers was not an abuse of discretion.

[¶ 33.] For these reasons and those stated in my majority writing in *Agar I,* I would affirm the trial court.

SABERS, Justice (dissenting).

[¶ 34.] I join the first two paragraphs of Chief Justice Miller's dissent. In *Agar I,* this court reversed the circuit court's dismissal of the taxpayers' claim for declaratory relief. Now the majority reverses the circuit court for following our direction that a declaratory judgment was appropriate and warranted. This is absurd, and contrary to the doctrine of "law of the case." It is also contrary to the doctrine of "stare decisis." In *Agar I,* the majority wrote, in response to Justice Wuest's dissent, that a declaratory judgment action was supported, at least in part, by the fact that two of the taxpayers paid the tax in full prior to the filing of their action. 527 N.W.2d at 287.

[¶ 35.] Here, Appellees' brief states that *all* of the named taxpayers have now paid the tax in full. "Denying these taxpayers the option of pursuing their declaratory challenge is contrary to the holding in [*Arneson v. Baker,* 76 S.D. 262, 77 N.W.2d 325 (1956) ]." *Id.* The majority attempts to distinguish *Arneson* by stating "the issue was limited to the legality of the tax and not the question of refunds." ¶ 16, *supra.* This ignores the express mention of the possibility of a refund as *part* of the declaratory judgment:

> The tax here involved was, in fact, paid by the plaintiffs, with the court approved provision for *ultimate disposition of the disputed portion* according to the judgment of the trial court.

76 S.D. at 264, 77 N.W.2d at 326 (emphasis added). If that is not a reference to a "question of refunds," then what is? The majority opinion fails to observe stare decisis and the law of the case.

[¶ 36.] I also dissent regarding the majority's failure to reach Issue 1, whether Agar School District was operating a high school within the boundaries of the district on July 1, 1993.

[¶ 37.] As a practical matter, I do not think a high school can be "operated" in the absence of a student body. *Cf. Concerned Citizens for the Pres. of Ind. Sch. Dist. No. 712 v. Mountain Iron–Buhl Ind. Sch. Dist. No. 712,* 431 N.W.2d 601, 604 (Minn.Ct.App.1988):

Here, all but 20 students left the Mountain Iron building. The 20 students who remain spend only partial days at the Mountain Iron facility. No students replaced the "transferred" students. There is no full curriculum and few activities. The doors of the school may be open, but for all practical purposes, the building does not exist as a school.

In the present case, the proposed school had only an *expectancy* of *any* enrollment; it had no students in attendance and only three students even contemplating enrolling.

[¶ 38.] As a legal matter, Agar High School was not accredited and had not sought accreditation as of July 1, 1993. Furthermore, no on-site review [7] for minimum accreditation standards was conducted prior to that date.

*See* ARSD 24:03:02:02, which at all times relevant [8] provided:

When minimum accreditation standards are met, the division shall issue a certificate of accreditation for four years effective July 1 *following* the on-site review.

(Emphasis added). Therefore, the earliest the school could have become accredited was July 1, 1994. I would reverse the circuit court on this issue, and thus also reverse the refund.

---

7. The only review timely conducted was relevant only to the K–8 program.

8. This section was repealed effective July 1, 1995. 1995 S.D. Laws, ch. 86, § 2.