#29280-a-MES
**2021 S.D. 8**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

WINGS AS EAGLES MINISTRIES, INC.,       Petitioner and Appellant,

v.

OGLALA LAKOTA COUNTY,       Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
OGLALA LAKOTA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT GUSINSKY
Judge

* * * *

TERRY L. PECHOTA
Rapid City, South Dakota       Attorney for petitioner and
appellant.


BRIAN T. AHRENDT
Oglala Lakota County
  State's Attorney
Hot Springs, South Dakota       Attorneys for respondent and
appellee.

* * * *

CONSIDERED ON BRIEFS
NOVEMBER 16, 2020
OPINION FILED **02/10/21**

#29280

SALTER, Justice

[¶1.]     Wings as Eagles Ministries, Inc. (Wings) applied for property tax exempt status for the 2014 and 2015 tax years, payable in 2015 and 2016 respectively.  Both applications were denied and became final determinations of the property's exempt status for the affected years.  Wings subsequently filed a petition with the Oglala Lakota County Commission (the Commission) seeking an abatement of its property taxes for 2014 and 2015.  The Commission denied the petition, and Wings appealed to the circuit court, which affirmed the Commission's decision.  Wings now appeals the abatement decision to this Court.  We affirm.

**Facts and Procedural History**

[¶2.]     Wings is a non-denominational Christian organization that operates on the Pine Ridge Indian Reservation in Oglala Lakota County (the County).[1]  Wings was founded in 1995 by Pastors Gary and Lori McAfee.  The McAfees work through Wings to provide charitable assistance and religious instruction to community members and youth in the area.  For example, Wings provides temporary housing for homeless and abused children and meals for members of the Reservation community.  Wings also hosts summer camps for visiting church groups and conducts a discipleship program for children and adults in the surrounding Reservation area.  Wings' mission and work have not fundamentally changed in the years since its inception.

---

1.     Wings is a 501(c)(3) non-profit corporation under the Internal Revenue Code and is exempted from paying sales tax.

-1-

[¶3.]    The property at issue in this case is 80 acres of a 114-acre tract located in the northwest part of the County.  Since 2005, this property was annually granted a property tax exemption by the County Board of Equalization (the Board).  However, for reasons that are not made clear in the record, the Board denied Wings' application for property tax exemption for the 2014 tax year, payable in 2015.[2]  Wings did not appeal this denial.[3]

[¶4.]    While awaiting the Board's decision for the 2014 tax year, the deadline passed for Wings to apply for an exemption for tax year 2015.[4]  Lori testified that she "was told" she should not apply for the 2015 exemption until the 2014 tax exempt status had been determined, though she did not explain who provided the advice or when and under what circumstances it was given.  Lori ultimately filed Wings' application for the 2015 exemption, but because it was submitted after the deadline, the Board denied it.

---

2.    The denial itself is not included in the record, but Wings indicated in its submissions to the circuit court that its application for exemption for tax year 2014 was denied on November 17, 2015.

3.    This fact appears to be undisputed, though Wings argues that its subsequent application for a property tax abatement to *the Commission* constituted an appeal of *the Board's* denial of its application for exempt status for the 2014 tax year.  For the reasons explained below, we do not view the abatement remedy and a taxpayer's statutory right to appeal the denial of an application for exemption to be interchangeable.

4.    The provisions of SDCL 10-4-15 provide:

> Any person, organization, corporation, or association claiming a property tax exemption status for any property under §§ 10-4-8.1 to 10-4-14, inclusive, § 10-4-39, or as may otherwise be provided by law, shall apply for such exemption to the county director of equalization on forms prescribed by the secretary of revenue prior to November first of the tax year.

[¶5.]        Wings appealed the 2015 exemption denial to the South Dakota Office of Hearing Examiners whose hearing examiner affirmed the Board's denial because the application was not filed by the statutory deadline. Wings did not appeal the hearing examiner's decision to the circuit court, and instead filed an application in December 2017, with the Commission for an abatement of its taxes for the 2014 and 2015 tax years, citing SDCL 10-18-1(3), which authorizes a county commission to abate a tax if the property is exempt.

[¶6.]        The Commission denied Wings' request for abatement,[5] and Wings appealed to the circuit court, which affirmed the Commission's decision after conducting a court trial. The court concluded that Wings was unable to meet the threshold eligibility element for an abatement under SDCL 10-18-1(3) because the decisions denying exempt status were final and had conclusively established that Wings was not, in fact, exempt for the 2014 and 2015 tax years.[6]

---

5.    The Commission did not rely upon the finality of the Board's prior determinations of the exemption applications and, instead, reviewed the abatement request on its merits, offering eight reasons it believed justified its decision to deny the abatement.

6.    The parties and the circuit court have all recounted a similar procedural history and agree that the 2014 and 2015 tax years, payable in 2015 and 2016, are at issue in this appeal. However, several references in the limited record give us some pause to wonder if that is the case, or whether this appeal actually concerns tax years 2015 and 2016. For instance, Wings' application for abatement indicates it is for 2015 and 2016, and the hearing examiner considered the untimely 2015 application for exemption to be for the 2016 tax year, not 2015. Adding to the confusion is Lori's testimony that Wings' property reacquired tax exempt status in 2016. Nevertheless, given the sparse nature of the record and the fact that our legal analysis is not impacted in either event, we will accept the consensus view of the parties and the circuit court that this case implicates the 2014 and 2015 tax years.

[¶7.] Wings appeals the circuit court's decision, raising two issues, which we restate as follows:

1.  Whether the circuit court erred by upholding the Commission's denial of a tax abatement.

2.  Whether the Commission was estopped from denying Wings' request for abatement for the 2015 tax year.

**Standard of Review**

[¶8.] The circuit court concluded it was acting in a quasi-judicial role when it reviewed the Commission's decision to deny Wings' application for an abatement. *See State, Dep't of Game, Fish, & Parks v. Troy Twp.*, 2017 S.D. 50, ¶ 21, 900 N.W.2d 840, 849; *Carmody v. Lake Cnty. Bd. of Comm'rs.*, 2020 S.D. 3, ¶ 17, 938 N.W.2d 433, 438. Neither party has challenged this conclusion, nor have they argued that the court incorrectly determined the facts. Indeed, we believe that the relevant facts on which the court made its decision are not disputed and that, regardless of its standard of review, the court's analysis turned on its construction and application of SDCL 10-18-1(3). Therefore, we confront a purely legal question here, which we review de novo. *In re Tr. Fund created under terms of Last Will & Testament of Baumgart*, 2015 S.D. 65, ¶ 26, 868 N.W.2d 568, 575.

**Analysis and Decision**

*Abatement under SDCL 10-18-1(3)*

[¶9.] The South Dakota Constitution authorizes tax exemptions for, among other things, "property used exclusively for . . . religious . . . and charitable purposes[.]" S.D. Const. art. XI, § 6. However, this constitutional provision is not self-executing and requires the Legislature to animate its text "by general law[.]" *Id. See also In the Matter of Hunt Companies, Inc.*, 2019 S.D. 26, ¶ 22, 927 N.W.2d

894, 899 (contrasting private property with public property of the United States, which is automatically exempt from taxation under Article XI, § 5 of the South Dakota Constitution).

[¶10.] The Legislature has, accordingly, enacted statutes establishing a procedure by which religious and charitable organizations can obtain exempt status for their property. These procedures require organizations to annually submit an application for exemption "prior to November first of the tax year." SDCL 10-4-15. The application prompts the director of equalization to conduct an initial examination before making a recommendation of "a taxable status or an exempt status" to the board of equalization. SDCL 10-4-16.

[¶11.] Applicants have an opportunity to be heard and submit additional information to the board of equalization "if the [board] makes a preliminary determination that all or any part of the property listed in the application has a taxable status[.]" SDCL 10-4-17. Applicants also have statutory rights to seek review of adverse determinations "in the same manner and under the same procedure as provided by law from any other actions of the county board of equalization." SDCL 10-4-18. The applicant can either: (1) appeal to the Office of Hearing Examiners and then subsequently seek review in the circuit court; or (2) appeal directly to the circuit court. SDCL 10-11-42 to -44.

[¶12.] Separate and apart from these specific statutory provisions, which relate directly to a religious or charitable organization's application for property tax exemption, the Legislature has also provided for two exclusive methods by which a taxpayer can seek to recover property taxes previously paid. *Agar Sch. Dist. No. 58-*

*1 v. McGee*, 1997 S.D. 31, ¶ 14, 561 N.W.2d 318, 322. The first is the pay and protest method provided in SDCL 10-27-2. *Id.* As its moniker suggests, taxpayers invoking this method must pay the tax and act within 30 days to commence an action to challenge its legality. SDCL 10-27-2.

[¶13.]    The second method for recovering taxes is the abatement procedure described in SDCL 10-18-1, which is at issue in this appeal. The statute provides, as is relevant here, that a county commission may abate or refund property taxes where a taxpayer "claims that the assessment or tax . . . is invalid" because the "property is exempt from the tax[.]" SDCL 10-18-1(3). Applications for abatement can be filed up to four years after the tax would have become delinquent. *See* SDCL 10-18-1.1 (stating that an abatement application must be "filed no later than the first day of November of the fourth year after which such taxes would have become delinquent"). Because abatement requests can be made long after the taxing authority has collected and expended the tax dollars, the circumstances under which relief may be obtained under SDCL 10-18-1 are narrower than the grounds for which relief may be obtained under the pay and protest method:

> Title 10 provides two avenues of relief when a tax is improperly levied against a person or entity—pay and protest (SDCL 10-27-2) and abatement of an erroneous tax assessment (SDCL 10-18-1). The pay-and-protest provisions afford taxpayers broad relief within a limited window (thirty days), while the erroneous tax assessment statute provides much narrower relief over a longer time period (four years). Reading these provisions in context indicates the Legislature intended SDCL 10-18-1 to be construed narrowly, applying only to the situations listed therein in light of the longer period for recovery. A narrow reading is justified because SDCL 10-27-2 provides taxpayers with broader grounds for relief, albeit for a shorter period of time.

*Hunt Companies*, 2019 S.D. 26, ¶ 24, 927 N.W.2d at 900.

[¶14.] The resolution of the principal issue in this appeal turns on our construction of SDCL 10-18-1(3). The circuit court held that obtaining exempt status is an essential predicate to establishing eligibility for a tax abatement because the tax can only be considered "invalid" if it was assessed on property which is, in fact, "exempt from the tax." If the property has not been determined to be exempt at the time of the application for abatement, the court reasoned, the request for abatement falls outside the scope of SDCL 10-18-1.

[¶15.] We believe the circuit court correctly applied the text of SDCL 10-18-1(3). By the time the Commission and the court considered Wings' abatement request for the 2014 and 2015 tax years, the exempt status for each tax year had already been denied and finally determined. Regarding Wings' 2014 exempt status, Wings timely applied for a tax exemption, but the Board denied the application, and Wings never appealed the Board's decision. As to Wings' 2015 exempt status, the Board denied Wings' application because it was not timely filed. Although Wings did appeal this determination to the Office of Hearing Examiners, it did not prevail. In both instances the decisions were final, leading to the inescapable conclusion that Wings' property was not "exempt from the tax" when the Commission and the circuit court considered Wings' abatement request. SDCL 10-18-1(3). The circuit court correctly reached the same conclusion:

> As a threshold matter, an abatement pursuant to SDCL 10-18-1(3) requires a showing that Wings' property was exempt from property taxes for tax years 2014 and 2015, and not merely that it *should have been* exempt or that it is *now* exempt.

[¶16.] Wings reads the relevant text of SDCL 10-18-1(3) differently and argues that the statute authorizes it to litigate anew the exempt status issue in

connection with its claim "that the assessment or tax . . . is invalid[.]" However, this argument does little to address *when* the determination of exempt status must be made—before or after the abatement application. We believe the plain text of SDCL 10-18-1(3) resolves this question with its requirement that the existing exempt status of the property, not its putative exempt status, must form the basis for a claim that the tax is invalid. Accepting Wings' interpretation would significantly alter the meaning of the statute. In that event, SDCL 10-18-1(3) would provide that a county commission can abate or refund taxes where a taxpayer alleges the tax is invalid because the taxpayer believes the property *should be* exempt.

[¶17.]    Neither party has suggested that SDCL 10-18-1(3) contains an ambiguity, but even if we were to look beyond the text, we believe our interpretation is supported by broader legal considerations. Chief among them is the idea that Wings' argument implicitly allows for collateral attacks on final determinations of property tax exemption applications. Wings has not cited any authority which would permit such a belated challenge on a final administrative determination, and our own research has not revealed any. In addition, allowing real-time relitigation of exempt status as part of an abatement request would effectively displace the other, more specific statutes described above, which govern the application process for religious and charitable organizations seeking exemption. *See Martinmaas v. Engelmann*, 2000 S.D. 85, ¶ 49, 612 N.W.2d 600, 611 ("When the question is which of two enactments the legislature intended to apply to a particular situation, terms

of a statute relating to a particular subject will prevail over the general terms of another statute.").

[¶18.]       As illustrated by the facts here, the procedural statutes in SDCL chapter 10-4 produce a final resolution of an applicant's exempt status sooner, rather than later, which, in turn, serves the salutary purpose of settling the expectations of taxpayers and taxing authorities. *See Hunt Companies*, 2019 S.D. 26, ¶ 25, 927 N.W.2d at 900 (recognizing that the narrower circumstances under which relief is available under SDCL 10-18-1 is supported by the fact that "the State possesses a strong interest in ensuring the timely collection of taxes, finality in assessments, and the regular functioning of counties"); *see also Agar Sch. Dist.*, 1997 S.D. 31, ¶ 23, 561 N.W.2d at 324 ("The purpose for the strict limitations on tax refunds is 'to permit taxing districts which have made levies for their needs to receive the contemplated revenue whereby they will not be crippled in operation . . . .'"). Indeed, these considerations lie at the heart of our cases recognizing the "narrow" grounds for relief under the statutory abatement procedure.

[¶19.]       Whether the determinations of Wings' exempt status for the 2014 and 2015 tax years were right or wrong when they were made is no more before this Court than it was before the circuit court. The decisions denying the exemption requests were unquestionably final by the time Wings submitted its application for abatement. Consequently, the circuit court did not err when it concluded Wings did not qualify for an abatement under SDCL 10-18-1(3).

### *Estoppel by a Public Official*

[¶20.]       As it relates to the 2015 tax year, Wings argues on appeal that the circuit court should have overlooked its late application for exemption because Lori

acted on advice from a County official who told her not to file the application until the 2014 request had been determined. This argument is not sustainable for two principal reasons.

[¶21.] First, Wings did not present an estoppel theory to the circuit court, and the court's memorandum opinion makes clear that it did not perceive such a request being before it. We generally do not address arguments, particularly ones that are fact intensive like an estoppel claim, for the first time on appeal, and we decline to do so here. *See Sunflour R.R., Inc. v. Paulson*, 2003 S.D. 122, ¶ 21, 670 N.W.2d 518, 523 ("This Court does not decide issues which are raised for the first time on appeal.").

[¶22.] Even if the argument had been presented to the circuit court, however, Wings could not prevail on its estoppel claim for the additional reason that it was not sufficiently developed during the court trial. Although Lori testified she "was told" not to file the 2015 application for exempt status, there is no additional testimony or evidence describing who advised her, when, or even whether the person was a County official.

[¶23.] In its appellate brief, Wings attempts to account for some of this missing information by using inferential logic to allege that the source of the advice must have been a County official. However, we think the effort cannot take the place of a properly developed trial record establishing the factual details necessary to support such a claim. *See Toben v. Jeske*, 2006 S.D. 57, ¶ 11, 718 N.W.2d 32, 35 ("Our review is restricted to facts contained within the settled record. . . . '[A]ll parties are obligated to see that the settled record contains all matters necessary for

the disposition of the issues raised on appeal, [and] the ultimate responsibility for presenting an adequate record on appeal falls upon the appellant.'") (second alteration in original).

## Conclusion

[¶24.]     The circuit court correctly recognized that Wings was not exempt from property taxes for 2014 and 2015, and therefore, the Commission lacked authority to consider an abatement under SDCL 10-18-1(3).  Moreover, Wings' estoppel argument is unreviewable because it was raised for the first time on appeal and is otherwise not sufficiently developed in the record.  We affirm.

[¶25.]     JENSEN, Chief Justice, and KERN and DEVANEY, Justices, and GILBERTSON, Retired Chief Justice, concur.

[¶26.]     MYREN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.