In the Matter of the **TERMINATION OF PARENTAL RIGHTS OF P.A.M.**

No. 18147–r.

Supreme Court of South Dakota.

Argued May 25, 1993.

Decided Sept. 8, 1993.

Paul S. Swedlund of Gunderson, Palmer, Goodsell and Nelson, Rapid City, for appellant, P.A.M., Father.

Anthony E. Crawford, Rapid City, for appellee, D.M.M., Mother.

WUEST, Justice.

This is an appeal from a judgment terminating P.A.M.'s parental rights to his daughter. We reverse.

## FACTS

A.E.M. was born on August 30, 1989. During the marriage of her parents, P.A.M. (hereinafter Father) abused Mother both physically and mentally. Mother obtained a divorce on May 15, 1991, but the threats and abusive conduct continued. On November 18, 1991, Father was arrested after breaking into Mother's home; he is currently serving twelve years in the South Dakota penitentiary for this crime.

Mother, citing Father's past abuse as grounds, filed a petition for the termination of Father's parental rights on March 16, 1992. Father moved to dismiss for failure to state a claim on which relief could be granted. The motion was denied.

At the September 28, 1992, hearing, the trial court adjudicated A.E.M. dependant and neglected. The court proceeded to the dispositional phase and terminated Father's parental rights.

Father appeals from the judgment on three grounds; we address only the first issue as we find it dispositive of this case.

## I. THE TRIAL COURT ERRED IN DENYING FATHER'S MOTION TO DISMISS.

■ We first note that a natural parent's "desire for and right to 'the companionship, care, custody, and management of his or her children'" is a fundamental right. *Santosky v. Kramer,* 455 U.S. 745, 758–59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599, 610 (1982) (quoting *Lassiter v. Department of Social Serv.,* 452 U.S. 18, 27, 101 S.Ct. 2153, 2160, 68 L.Ed.2d 640, 649 (1981)).

■ A motion to dismiss tests the legal sufficiency of the pleading; for purposes of the pleading, the court must treat as true all facts properly pled in the complaint. SDCL 15–6–12(b)(5); *Johnson v. Kreiser's, Inc.,* 433 N.W.2d 225, 226 (S.D.1988); *Janklow v. Viking Press,* 378 N.W.2d 875, 877 (S.D.1985). Our review of a trial court's denial of a motion to dismiss for failure to state a claim is the same as our review of a motion for summary judgment—is the pleader entitled to judgment as a matter of law. *Jensen Ranch, Inc. v. Marsden,* 440 N.W.2d 762, 764 (S.D.1989). A motion under SDCL 15–6–12(b)(5) is identical to a motion under Fed. R.Civ.P. 12(b)(6). As we expressed in *Janklow:*

> [F]or the purposes of the [SDCL 15–6–12(b)(5)] motion, the complaint is construed in the light most favorable to the pleading party, facts "well plead" and not mere conclusions may be accepted as true and doubts are resolved in favor of the pleader.... "[P]leadings should not be dismissed merely because the court entertains doubts as to whether the pleader will prevail in the action as this is a matter of proof, not pleadings. The rules of proce-

dure favor the resolution of cases upon the merits by trial or summary judgment rather than on failed or inartful accusations." *Janklow,* 378 N.W.2d at 877 (citing 5 C. Wright and A. Miller, Federal Practice and Procedure § 1357 (1971)). In the present matter, the trial court granted a motion to dismiss, as a matter of law. "A motion to dismiss ... tests the law of a plaintiff's claim and not the facts which support it." *Hunt v. Hunt,* 309 N.W.2d 818, 820 (S.D.1981). In *Jensen Ranch* we explained: "We stated in *Norwest Bank* that a court which treats a motion to dismiss as one for summary judgment must advise the parties of its intent and give all parties an opportunity to present matters pertinent to such a motion by SDCL 15–6–56." *Jensen Ranch,* 440 N.W.2d at 764 (citing *Norwest Bank Black Hills, N.A. v. Rapid City Teachers Fed. Credit Union,* 433 N.W.2d 560 (S.D.1988)). In the case before us, the trial court did not treat the motion to dismiss as a motion for summary judgment.[1]

Father moved to dismiss Mother's petition on the ground that South Dakota law provided no statute giving her a cause of action to terminate his parental rights. He claims the three SDCL chapters providing authority for the State to terminate parental rights are the exclusive means by which parental rights may be terminated in South Dakota:

SDCL Ch. 25–5A Voluntary Termination of Parental Rights

SDCL Ch. 25–6 Adoption of Children

SDCL Ch. 26–8A Protection of Children from Abuse and Neglect

Mother cited no South Dakota statutory authority in her petition to terminate Father's parental rights. Nonetheless, she claims that under SDCL 25–5A–21[2] termi-

---

1. This should be distinguished from our cases holding that we treat motions on Rule 12 like Rule 56 motions under certain circumstances. In *Tibke v. McDougall,* 479 N.W.2d 898 (S.D. 1992) we stated: "The South Dakota Rules of Civil Procedure state that if, on a motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in SDCL 15–6–56.... Accordingly, on review we treat defendants' motions to dismiss as motions for summary judgment and the disposition

a grant of those motions." *Tibke,* 479 N.W.2d at 903–04 (citing *Glanzer v. St. Joseph Indian School,* 438 N.W.2d 204, 206 (S.D.1989). See also *Cooper v. Merkel,* 470 N.W.2d 253 (S.D. 1991) where we likewise stated that "If, on a motion to dismiss for failure to state a claim, matters outside the pleadings are presented to, and not excluded by, the trial court, the motion should be treated as one for summary judgment." *Cooper,* 470 N.W.2d at 255 (citing *Glanzer, supra),* (citing SDCL 15–6–12(b)).

2. SDCL 25–5A–21 provides:

nation proceedings are to be treated as cumulative and therefore the statutes concerning termination of parental rights are cumulative. Our interpretation of this statute must take into consideration the chapter in which it appears. *Hartpence v. Youth Forestry Camp,* 325 N.W.2d 292, 295 (S.D.1982) (statutes must be read to give effect to all provisions); *In re Estate of Smith,* 401 N.W.2d 736, 740 (S.D.1987) (in determining legislative intent we must assume the legislature had in mind other provision relating to the same subject matter).

Mother's argument ignores the plain language of 25–5A–2 which explains that the laws contained in SDCL Ch. 25–5A are for the "voluntary termination of parental rights . . . whenever it appears that the parent or parents of any child desires to relinquish such parental rights." SDCL 2–14–1; *Appeal of AT & T Info. Sys.,* 405 N.W.2d 24, 27 (S.D.1987) (it is presumed that the words of a statute have been used to convey their ordinary, plain meaning). Voluntary termination by Father is obviously not the case here. *Garrett v. BankWest,* 459 N.W.2d 833, 847 (S.D.1990) (no party may ignore the clear and obvious). SDCL 25–5A–21 does not give Mother a right to petition for termination of Father's parental rights.

Mother also interprets SDCL 25–5–16 [3] as providing authority to bring an action for termination of Father's rights. The statute is published under SDCL Ch. 25–5 which contains the laws relating to custody and support of a child. The statute refers to the duty of support and education in the same phrase as freedom from dominion. In the context in which the word dominion appears in the statute and the chapter in which the statute is published, the word dominion must be read as synonymous with custody. To interpret the statute as granting authority to terminate parental rights while at the same time requiring parental support would be inconsistent. *Nelson v. South Dakota State*

*Bd. of Dentistry,* 464 N.W.2d 621, 624 (S.D. 1991) (strained and absurd construction should be avoided).

The only previous case interpreting SDCL 25–5–16 is *Blow v. Lottman,* 75 S.D. 127, 59 N.W.2d 825 (1953) (under common law and modern statutes, state has a right to deprive parent of custody and terminate parental rights under proper circumstances). Mother contends *Blow* stands for the proposition there is common law authority for a custodial parent to petition for termination of a noncustodial parent's rights. To the extent that *Blow* so held, it was incorrect and is overruled.

■ Proceedings to terminate parental rights were unknown at common law. *In re Zink,* 264 Minn. 500, 119 N.W.2d 731, 734 (1963). Therefore, termination proceedings are purely statutory. *Petition of Sherman,* 241 Minn. 447, 63 N.W.2d 573, 576 (1954); *see also, Matter of McDuel,* 142 Mich.App. 479, 369 N.W.2d 912, 917 (1985) (the court cannot create a "common law" justifying the termination of parental rights); *D.J.A. v. Smith,* 477 S.W.2d 718, 720 (Mo.Ct.App.1972) (absent a statute the juvenile court has no power to terminate parental rights); *S.K.L. v. Smith,* 480 S.W.2d 119, 123 (Mo.Ct.App. 1972) (the power of a court to terminate forever the legal right of parents to their children exists only by creation of a statute); *Matter of Edmunds,* 560 P.2d 243, 245–46 (Okla.App.1977) (court erred in failing to grant motion to dismiss as court had no authority to terminate parental rights without complying with statute); *In re A.A.,* 134 Vt. 41, 349 A.2d 230, 232 (1975) (parental rights cannot be transferred to state absent statutory authority).

The majority of jurisdictions clearly hold that absent statutory authority, private individuals have no standing to initiate and prosecute proceedings to terminate parental rights. *McCall v. District Court, County of*

---

This chapter shall not be treated or construed as exclusive of any other remedy authorized by law but as cumulative merely.

3. SDCL 25–5–16 provides:
The abuse of parental authority is the subject of judicial cognizance in a civil action in the circuit court, brought by the child or by its

relatives within the third degree, or by the officers of the poor where the child resides; and when the abuse is established, the child may be freed from the dominion of the parent and the duty of support and education enforced.

*Montezuma*, 651 P.2d 392, 393–94 (Colo.1982) (while private persons may file report in neglect and dependency case, only the state may bring a petition); *Davis v. Davis*, 708 P.2d 1102, 1113 (Okla.1985) (only the state, not custodial parent, may bring petition for termination of non-custodial parent's rights under neglect and dependency statute) [4]; *In re John*, 605 A.2d 486, 488 (R.I.1992) (custodial mother had no private right of action to terminate father's parental rights under neglect or abandonment statute); *In re Welfare of Kevin L.*, 45 Wash.App. 489, 726 P.2d 479, 485 (1986) (McInturff, J., specially concurring) (conflict with child's interests provides sufficient reason to exclude both foster parents and natural parents from commencing termination proceedings for abuse & neglect). We agree with the Colorado Supreme Court which stated:

> [Neglect or abandonment statute] was not designed to be used as a sword in an exspouse's arsenal of weapons against a former mate to preclude involvement of the noncustodial parent forever. A spouse's proper action to prevent his or her exspouse from having contact with a child is

to make a motion for denial of visitation and custody . . . or for a protective order. *In re John*, 605 A.2d at 489.

Mother has remedies available under South Dakota law. The court which granted the divorce and determined custody of A.E.M. may deny Father any visitation rights. Justice will be better served if the appropriate relief is granted by the court of continuing jurisdiction. This will also prevent "forum shopping" by disgruntled litigants. Additionally, Mother may report abuse of A.E.M. to the South Dakota Department of Social Services (D.S.S.).[5]

The trial court erred in denying the motion to dismiss as Father was entitled to a judgment of dismissal as a matter of law. We reverse.

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., concur.

---

4. We note the Oklahoma legislature subsequently amended Okla.Stat.Ann. tit. 10 § 1130 (West 1992) to allow a custodial parent standing to bring a petition.

5. SDCL Ch. 26–8A, which governs the D.S.S.'s investigation of child abuse, has safeguards to protect a parent's fundamental constitutional right to his or her child through independent investigation, counseling, rehabilitation and the application of the least restrictive alternative to termination of parental rights. Further, the required appointment of independent counsel for the child helps insure protection of the child's best interests. These safeguards were entirely lacking in this case. The D.S.S. is the proper body to investigate and recommend appropriate action where there are allegations of child abuse.