Unified Judicial System

 

 
 DAN NELSON, AUTOMOTIVE, INC.,
d/b/a DAN NELSON ISUZU,
a South Dakota Corporation and
SOUTH DAKOTA ACCEPTANCE CORPORATION,
d/b/a CNAC,
a South Dakota Corporation,
Plaintiffs and Appellants,
v.
GARY R. VIKEN,
in his individual capacity and
in his official capacity as Secretary of Revenue,
Defendant and Appellee.
[2005 SD 109]
South Dakota Supreme Court
Appeal from the Circuit Court of
The SECOND Judicial Circuit
MINNEHAHA County, South Dakota
Hon. KATHLEEN K. CALDWELL, Judge
RONALD A. PARSONS, Jr.
A. RUSSELL JANKLOW of
Johnson, Heidepriem, Miner, Marlow and Janklow, LLP
Sioux Falls, South Dakota
Attorneys for plaintiffs and appellants. DONALD W. HAGEMAN
South Dakota Department of Revenue and Regulation
Pierre, South Dakota
Attorneys for defendant and appellee. Considered on Briefs on March 21, 2005
Opinion Filed 11/2/2005
#23363
ZINTER, Justice
[Â¶1.] Dan Nelson Automotive Inc. (Nelson) and the South Dakota Acceptance Corporation (CNAC) brought an action for declaratory relief against the Secretary of the Department of Revenue and Regulation in his individual and official capacities.  Nelson requested the circuit court to interpret certain statutes that impose an excise tax on the sale of automobiles and to declare the partiesâ respective rights under those statutes.  The circuit court dismissed the action on procedural grounds.  The circuit court concluded that (1) Nelson had not exhausted all of its administrative remedies, (2) the State had not been joined as an indispensable party and, (3) even if the State had been joined, it could not be sued for declaratory relief.  We reverse and remand.
Facts and Procedural History [Â¶2.] Nelson and CNAC (collectively referred to as Nelson) are South Dakota corporations.  Nelson sells motor vehicles, some on installment contracts.  CNAC finances Nelsonâs installment sales.  The statutes at issue impose a three-percent excise tax on these vehicle sales.  This dispute involves the tax on motor vehicles that are repossessed or returned before the initial installment buyer has paid the full contract price of the vehicle.
[Â¶3.]  The excise tax is imposed on the âpurchase priceâ of motor vehicles purchased or acquired for use on the streets and highways of this State.  SDCL 32-5B-1.[1]  The purchase price, for computation of the tax, is defined as âtotal consideration whether received in money or otherwise.â  SDCL 32-5B-4(1) (emphasis added).  Nelson contends that when vehicles are returned or repossessed and then resold, it should not be required to pay all of the excise tax on the initial purchase price because Nelson never received the full purchase price from the first installment buyer.[2]  Nelson ultimately seeks a declaratory ruling that the excise tax may not be lawfully imposed on that portion of the initial price that Nelson does not actually receive from the initial defaulting buyer.[3]
[Â¶4.] Nelson brought this action under SDCL Ch. 21-24, South Dakotaâs version of the Uniform Declaratory Judgment Act.  Nelson did not seek a refund of taxes previously paid.  Rather, Nelson only sought prospective declaratory relief âconcerning the construction of [these] tax statutes and [the partiesâ] corresponding rights and obligations pursuant to SDCL Ch. 32-5B.â
[Â¶5.] The circuit court dismissed the action on procedural grounds without construing the statutes.  That ruling raises the following issues on appeal:
(1)        Whether administrative remedies must have been exhausted before the circuit court could entertain this action to interpret a tax statute under the Uniform Declaratory Judgment Act; (2)        Whether the State was joined as an indispensable party; and (3)        Whether the Uniform Declaratory Judgment Act or sovereign immunity precluded declaratory relief against the State. Decision [Â¶6.] This Court âreviews the trial courtâs grant or denial of a motion to dismiss by determining whether the pleader was entitled to judgment as a matter of law.â  Springer v. Black, 520 NW2d 77, 78 (SD 1994).  See also Estate of Billings v. Deadwood Congregation of Jehovah Witnesses, 506 NW2d 138, 140 (SD 1993); In re P.A.M., 505 NW2d 395, 396 (SD 1993).  Questions of law are reviewed de novo.  Rusch v. Kauker, 479 NW2d 496, 499 (SD 1991) (citing Permann v. Department of Labor, Unemployment Ins. Div., 411 NW2d 113, 117 (SD 1987)).
Exhaustion of Administrative Remedies [Â¶7.] Two well-established doctrines are implicated when the issue of administrative exhaustion is raised.  The first âdoctrine is primarily concerned with the timing of the judicial review of administrative action.â  Mordhorst v. Egert, 88 SD 527, 531, 223 NW2d 501, 504 (1974) (emphasis added).  Because administrative action has occurred, this doctrine simply determines when courts may review the administrative agencyâs decision.  However, this doctrine must âbe distinguished from the doctrine of primary jurisdiction.â  Id.  Primary jurisdiction questions arise when both an administrative agency and a court have authority to hear an initial dispute.  Id. at 531-32, 223 NW2d at 504.  When both entities have authority to hear the initial dispute, the doctrine of primary jurisdiction âdetermines whether the court or the agency should make the initial determination.â  Id. (citation omitted).  Thus, the first doctrine considers when a court may appropriately review an administrative decision that has been made, while the second considers which entity, an administrative agency or a court, should hear the initial dispute.
[Â¶8.] In this case, there was no administrative decision to review, and both the Department and the circuit court had jurisdiction to interpret the excise tax statutes.  Therefore, this case involves a question of primary jurisdiction.  The question is who had jurisdiction to hear this case first.  Must the Department have interpreted the excise tax statutes and determined the rights of the parties before the circuit court was authorized to do so?  We conclude that the answer is no because the Department did not have exclusive jurisdiction to interpret tax statutes, and absent a request for a tax refund, the administrative remedies were not mandated.
[Â¶9.] We begin the exhaustion analysis by noting that South Dakotaâs Declaratory Judgment Act âpermits [circuit courts to make a] declaration of legal rights or relations before an actual injury occurs.â  Boever v. South Dakota Bd. of Accountancy, 526 NW2d 747, 749 (SD 1995).  And, as it relates to the question of primary jurisdiction, SDCL 15-6-57 specifically provides that â[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.â  Therefore, as we stated in an earlier tax dispute, â[a] request for declaratory relief [to interpret taxation statutes] may be allowed even when another adequate remedy exists.â  Agar School Dist. v. McGee, 527 NW2d 282, 287 (SD 1995) (Agar I).[4]
[Â¶10.] The Department, however, contends that two specific provisions of the Administrative Procedures Act require administrative review before allowing declaratory relief in circuit court.  The Department first relies on the first sentence of SDCL 1-26-30, an administrative appeal statute.  That statute provides:  âA person who has exhausted all administrative remedies available within any agency or a party who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter.â  SDCL 1-26-30.
[Â¶11.] We agree that had administrative action been taken by the Department, SDCL 1-26-30 would have required an administrative appeal in circuit court before a declaratory action could be pursued.  However, this statute presupposes that some administrative action has already occurred or been exhausted.  Therefore, this statute only addresses the exhaustion doctrine involving the timing of judicial review of administrative action, which is not at issue here.  The issue here is one of primary jurisdiction; i.e. whether the court or the agency had jurisdiction to consider original redress.  And, with respect to that issue, SDCL 1-26-30 specifically disclaims primary jurisdiction by the administrative agency.  That statute further provides: âThis section does not limit utilization of or the scope of judicial review available under other means of review, redress, or relief, when provided by law.â  Id.  Because SDCL Ch. 21-24 and 15-6-57 authorize other means of review and redress through declaratory relief in circuit court even when âanother adequate remedyâ exists,  SDCL 1-26-30 does not vest the Department with primary jurisdiction to interpret these statutes.
[Â¶12.] The Department also argues that it has primary jurisdiction under a second provision of the Administrative Procedures Act that authorizes administrative agencies to issue declaratory rulings.  SDCL 1-26-15 provides in relevant part:
Each agency shall provide by rule for the filing and prompt disposition of petitions for declaratory rulings as to the applicability of any statutory provision or of any rule or order of the agency. ... Rulings disposing of petitions have the same status as agency decisions or orders in contested cases. ... Pursuant to this statute, the Department has adopted rules authorizing declaratory rulings on the applicability of tax statutes.  ARSD 64:01:01:08 provides:
An individual may apply for a declaratory ruling by filing a petition directed to the secretary which states generally the factual situation existing under which the question arises.  The petition must be verified by the petitioner, except that matters not within the personal knowledge of the petitioner may be on information or belief.  The petition shall identify all persons who have or claim any interest which would be affected by the declaratory ruling.  When declaratory relief is sought all persons who have or claim any interest which would be affected by the declaration shall be made parties.[5] Thus, the Department correctly points out that its declaratory ruling process is available to obtain declaratory relief.
[Â¶13.] Although the Department further argues that this administrative alternative should be utilized first, we have stated that if âa party is not mandated or required to proceed administratively and a separate avenue of judicial review is available,â the use of administrative remedies is not required.  Jansen v. Lemmon Fed. Credit Union, 1997 SD 44, Â¶10, 562 NW2d 122, 124 (citations omitted) (emphasis added).  This rule is in accord with other courts that recognize âthe prohibition against awarding declaratory relief to parties who have alternative statutory or administrative remedies is applicable only where the alternative means of redress was intended to be exclusive.â  Maryland-Natâl Capital Park & Planning Commân v. Washington Natâl Arena, 386 A2d 1216, 1223 (Md 1978) (citations omitted).
[Â¶14.] However, in this case there is nothing to suggest that the Departmentâs declaratory process was intended to be the exclusive, mandated, or required means of relief.  Furthermore, SDCL 15-6-57 provides that the existence of other remedies does not preclude declaratory relief in circuit court.â[6]  Therefore, because the Departmentâs declaratory process is not exclusive, mandated, or required, the mere existence of this alternative administrative remedy does not preclude similar relief in circuit court.
[Â¶15.] The circuit court, however, also concluded that a statutory alternative remedy, the tax refund procedure found in SDCL Ch. 10-59, was mandated and exclusive, thereby precluding declaratory relief in circuit court.  Both the circuit court and the Department relied upon SDCL 10-59-17[7] and 10-59-20,[8] which specifically prohibit judicial review of a taxpayerâs request for a tax refund until the taxpayer follows certain statutory procedures.  Although the circuit court recognized that Nelson did not seek the prerequisite tax refund, the court concluded that granting declaratory relief âwould have the practical effect of establishing or rejecting a right to [a] refund.â  Therefore, the circuit court concluded that Nelson could not bypass this statutory remedy.
[Â¶16.] We disagree with the circuit courtâs âpractical effectâ analysis.  Nelson did not request a refund for any installment sale nor did it seek any type of contemporaneous relief.  Rather, Nelson only sought a prospective interpretation of the excise tax statutes.  Under these circumstances, declaratory relief relating to taxation matters has long been permitted.  See Arneson v. Baker, 76 SD 262, 77 NW2d 325 (1956) (allowing declaratory judgment to determine how much tax was owed by taxpayers because they were not seeking a refund of taxes previously paid). This Court explained that such actions are permitted because collection of the tax is not âdelayed or hindered by the maintenance ofâ a declaratory action.  Id. at 264, 77 NW2d at 326.
The tax here involved was, in fact, paid by the plaintiffs, with the court approved provision for ultimate disposition of the disputed portion according to the judgment of the trial court. Collection of the tax was in no way delayed or hindered by the maintenance of this action, which seeks only a declaration. ... Id.  This Court ultimately concluded that an analogous tax payment and refund scheme was not a taxpayerâs exclusive remedy, and therefore, declaratory relief was available in circuit court:
If [the alternative tax protest and refund scheme] is the exclusive remedy, it means that between thirteen and fourteen thousand taxpayers must pay the tax and bring separate actions to determine whether the officer acted within the law in enforcing the payment of the tax.  Seeking a declaratory judgment does not delay the collection or payment of the tax as the officer in charge is in position to enforce its payment at all times while the action is pending.  While it is true that no restraining order would lie during the pendency of the action, it does not follow that the legislature intended this to be the exclusive remedy which a taxpayer has and that the declaratory judgment statute is not to apply. Id. at 265, 77 NW2d at 327 (quoting Berlowitz v. Roach, 252 Wis 61, 65-66, 30 NW2d 256, 258 (1947)).  Therefore, because the tax payment and refund remedy in SDCL Ch. 10-59 is not mandated or exclusive when no refund is sought, this statutory remedy does not divest the circuit court of primary jurisdiction to interpret the statute and declare the rights of the parties.
[Â¶17.] The Department suggests that we should reach a contrary conclusion under our later decision in Agar School Dist. v. McGee, 1997 SD 31, Â¶15, 561 NW2d 318, 323 (Agar II).  In Agar II, this Court held that taxpayers could not seek declaratory relief.  Id.  However, Agar II is clearly distinguishable as it involved a request for a tax refund; i.e. âa taxpayer [action] for the recovery of taxes paid.â Id. Â¶14, 561 NW2d at 322 (citation omitted).  Because â[t]he circuit court held the adjusted tax levy was illegal and ordered a refund of the collected tax,â id. Â¶9, 561 NW2d at 321, those tax refund statutes were the âexclusive taxpayer recovery remedies.â[9]  Id. Â¶17, 561 NW2d at 323.
[Â¶18.] In this case the tax refund statutes are not the exclusive taxpayer remedy because Nelson is not seeking a tax refund.  Thus, Agar II does not control.  Rather, this case is governed by Agar I, which reaffirmed the right, since at least 1956, to use a declaratory judgment action to determine the applicability of taxes:
This Court rejects the trial courtâs reasons for dismissing the action for declaratory relief.  A request for declaratory relief may be allowed even when another adequate remedy exists.  As a general matter, the Uniform Declaratory Judgments Act provides: âNo action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for.â SDCL 21-24-1.  More specifically, SDCL 15-6-57 states in pertinent part: âThe existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.â Further, in Arneson v. Baker, 76 SD 262, 77 NW2d 325 (1956), this Court ruled that the payment under protest remedy provided by statute is not an exclusive remedy, and that declaratory relief is appropriate in cases alleging the illegality of a tax.  Under the rationale of Arneson, an action for declaratory relief is consistent with [the tax refund statutes] because a request for declaratory relief does not hinder tax collection efforts.  See Arneson, 77 NW2d at 327.  Furthermore, a declaratory judgment action is a meaningful alternative to payment under protest statutes, because it permits âthe joinder in interest of many plaintiffs who might otherwise, however much aggrieved, be individually unable to secure review of such questions.â Agar I, 527 NW2d at 287.  See also Boever, 526 NW2d 747; Dakota Sys., Inc. v. Viken, 2005 SD 27, Â¶10, 649 NW2d 23,28 (reaffirming that âdeclaratory actions to determine the illegality of a tax are permissibleâ and the tax refund statutes do not preclude âseeking a declaratory judgment on the legality of a taxâ).
[Â¶19.] The circuit court and the Department finally relied on the ârestriction on the availability of a declaratory judgment action with reference to its applicability to administrative mattersâ that was recognized in Rocky Mountain Oil & Gas Assân v. Wyoming, 645 P2d 1163, 1168 (Wyo 1982).  Rocky Mountain observed that some executive branch administrative activities are not generally subject to judicial review in the first instance:
Where the action would result in a prejudging of issues that should be decided in the first instance by an administrative body, it should not lie.  This is because, if it be otherwise, all decisions by the several agencies could be bypassed, and the district court would be administering the activities of the executive branch of the government. ... Accordingly, where the relief desired is in the nature of a substitution of judicial decision for that of the agency on issues pertaining to the administration of the subject matter for which the agency was created, the action should not be entertained. Id.  (internal citations omitted).  We agree that courts should not be initially involved in this type of decision making concerning the administration of executive functions or programs.  However, Rocky Mountain noted that the restriction is inapplicable in actions determining the constitutionality or interpretation of statutes upon which administrative action will be taken:
If, however, such desired relief concerns the validity and construction of agency regulations, or if it concerns the constitutionality or interpretation of a statute upon which the administrative action is, or is to be, based, the action should be entertained.  This is no more than that obviously and plainly provided for in the language of the Uniform Declaratory Judgments Act. Id. at 1168-69.  Thus, even under the Rocky Mountain analysis, the Department did not have primary jurisdiction because this action involved the interpretation of a statute, a matter clearly authorized by the Declaratory Judgment Act.
[Â¶20.] Therefore, in accordance with Jansen, Agar I, Arneson, Dakota Sys., and SDCL 15-6-57, we conclude that the doctrine of primary jurisdiction did not preclude this action for a prospective interpretation of the excise tax statutes.
Was the State an Indispensable Party That Had Not Been Joined
[Â¶21.] The circuit court also dismissed because it concluded that the State was an indispensable party that had not been joined.  Although this suit was filed against the Secretary in his official capacity, the court apparently concluded that was insufficient to make the State a party.
[Â¶22.] In analyzing this question, we agree that the State was required to be joined as an indispensable party.  SDCL 21-24-7 provides that â[w]hen declaratory relief is sought all persons shall be made parties who have or claim any interest which would be effected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.â  Because the State clearly had an interest that would be prejudicially affected by an adverse decision, the State was an indispensable party.
[Â¶23.] However, the suit against the Department Secretary in his official capacity joined the State as a party defendant.  The State was joined as a party because, by definition, an âofficial-capacity suitâ is â[a] lawsuit that is nominally against one or more individual state employees but ... has as the real party in interest the state or a local government.â  Blackâs Law Dictionary (8th ed 2004).  Thus, it is well-settled that suits against officers of the state âin their official capacity, [are] in reality [suits] against the State itself.â  Pennington County v. State ex rel. Unified Judicial Sys., 2002 SD 31, Â¶13, 641 NW2d 127, 131.  See also Parks v. Cooper, 2004 SD 27, 676 NW2d 823; Reis v. Miller, 1996 SD 75, 550 NW2d 78; Dorian v. Johnson, 297 NW2d 175 (SD 1980); Will v. Michigan Depât of State Police, 491 US 58, 71, 109 SCt 2304, 2312, 105 LEd2d 45, 58 (1989); Coastal Plains Utils., Inc. v. New Hanover County, 601 SE2d 915, 919 n1 (NCCtApp 2004); Cox v. State, 399 SW2d 776, 778 (Tenn 1965).  Because the State was the real party in interest in this official capacity suit, the State was joined as a party.
May the State be Sued for Declaratory Relief
[Â¶24.] The circuit court concluded that even if the State could be joined, it could not be sued for declaratory relief because (a) the State was not a âpersonâ within the meaning of the Declaratory Judgment Act and (b) the State was immune from suit.  We disagree with both conclusions.
(a) Is the State a Person Within the Meaning of the Declaratory Judgment Act
[Â¶25.] SDCL 21-24-3 provides in relevant part: âAny person ... whose rights, status, or other legal relations are affected by a statute, ... may have determined any question of construction or validity arising under the ... statute, ... and obtain a declaration of rights, status, or other legal relations thereunder.â (emphasis added).  The word âpersonâ is defined to include a âmunicipal, public or other corporation of any character whatsoever.â  SDCL 21-24-2.
[Â¶26.] In determining whether this definition includes the State, we initially note that the State is considered to be a âpersonâ or a âpublic corporationâ in many provisions of South Dakota law.[10]  It is also significant that many other jurisdictions have specifically concluded that the state and other governmental entities are persons within the meaning of the Uniform Declaratory Judgment Act.[11]  These decisions often rely on the rule that the provisions of the Act, including the definition of the word âperson,â are to be construed and administered liberally.  SDCL 21-24-14; State ex rel. Smrha v. General Am. Life Ins. Co., 272 NW 555, 557-58 (Neb 1937) (stating that because the act is to be construed liberally, âthe state is embraced under the expression âany personââ).  See also Kneip v. Herseth, 87 SD 642, 647, 214 NW2d 93, 96 (1974) (stating â[t]o effectuate the purpose of this remedial declaratory judgment legislation, the courts are to interpret it with liberalityâ); Anderson v. McRae, 495 SW2d 351, 356 (TexCivApp 1973) (explaining that â[t]he Act is to be liberally construed and should not be hedged about by technicalitiesâ). Finally, the inclusion of the state as a person subject to the Act is consistent with South Dakotaâs long history of allowing declaratory judgment actions against the state.[12]  Therefore, we hold that the State is a âpersonâ within the meaning of SDCL 21-24-2, and as a result, the Declaratory Judgment Act does not preclude the stateâs joinder as a party defendant.[13]
(b) Is the State Immune from Suit for Declaratory Relief
[Â¶27.] The common-law doctrine of sovereign immunity[14] is expressed in Article III, Section 27 of the South Dakota Constitution.[15]  Sovereign immunity âprevents the governing acts of the state, its agencies, other public entities, and their employees from attack in court without the stateâs consent.â  Wulf v. Senst, 2003 SD 105, Â¶20, 669 NW2d 135, 142 (citing Casazza v. State, 2000 SD 120, Â¶11, 616 NW2d 872, 875).  However, sovereign immunity does not prohibit all actions brought against state officials or agencies.  Id.  (citing Wilson v. Hogan, 473 NW2d 492 (SD 1991)).  Some actions may be brought against state officers and agencies.  White Eagle Oil & Refining Co. v. Gunderson, 48 SD 608, 616, 205 NW 614, 617 (1925); Dakota Sys., 2005 SD 27, Â¶9, 694 NW2d at 28.  Those actions include suits to compel a state official to perform official duties that are purely ministerial and involve no discretionary power.  In those cases âstate officials may be restrained or prohibited by appropriate action or procedure, in any court having jurisdiction, from performing unlawful acts as such officials, without the consent of the state.â  White Eagle Oil & Refining Co., 48 SD at 616, 205 NW at 617.  Such actions are permitted because â[s]overeign immunity does not bar suits against state officials acting in excess of their statutory authority or pursuant to an unconstitutional statute.â Dakota Sys., 2005 SD 27, Â¶9, 694 NW2d at 28 (quoting Miller v. Egan, 265 Conn 301, 316, 828 A2d 549, 560 (2003)).  Therefore, âa declaratory judgment action attacking the constitutionality of a statute or seeking relief from an invalid act or an abuse of authority by an officer or agent is ... not prohibited by principles governing sovereign immunity.â  Id. (quoting Northwall v. Depât of Revenue, 263 Neb 1, 7, 637 NW2d 890, 896 (2002)).
[Â¶28.] Although Dakota Systems involved a constitutional challenge to tax statutes, actions seeking interpretation of tax statutes are also permitted within this sovereign immunity exception.  In Cobb v. Harrington, 144 Tex 360, 190 SW2d 709 (1945), the Texas Supreme Court considered a remarkably similar dispute.  In that case, a Texas company brought a declaratory judgment action against the Texas State Comptroller to declare âwhether or not respondents are legally liable to pay and petitioners are legally authorized to demand, collect and receive from respondents an occupation tax measured by the gross receipts of âmotor carriersâ â under a Texas statute.  Id. at 362, 190 SW2d at 710.  In rejecting the sovereign immunity defense, the Texas court explained that declaratory judgment did not âimpose liability upon the State or compel the performance of its contractsâ nor was it an action âfor the recovery of money from the Stateâ that would be paid out of the State treasury.  Id. at 365-66, 190 SW2d at 712.  The court further explained that the action was not one to control a state official that was âacting within the scope of authority lawfully conferred upon him.â  Id. at 366, 190 SW2d at 712.  Rather, the action only sought to âobtain[] a judgment declaring that respondents [were] not motor carriers as defined by the tax statute, and that petitioners, in endeavoring to compel respondents to pay the tax, [were] acting ... without legal authority.â  Id.  The court ultimately concluded that when state officials perform acts that are in excess of their statutory authority, they are not âacts of the Stateâ within the rule of immunity.  Id.  Thus, as the Supreme Court of Wisconsin noted:
It is generally held by the courts, both state and federal, that where the action taken or threatened by an officer, is alleged to be in violation of the complainantâs rights, either because of a misconstruction or misapplication by the officer of a statute, or on account of the alleged unconstitutionality of the statute, the action is not in fact one against the state [for purposes of sovereign immunity] but is rather against the individual because of his lack of power and authority to do the thing complained of. Berlowitz v. Roach, 252 Wis 61, 65, 30 NW2d 256, 258 (1947) (citation omitted).[16]
[Â¶29.] Notwithstanding this exception, the circuit court concluded and the State argues that the State is immune from suit under our decision in Pennington County, 2002 SD 31, 641 NW2d 127.  In that case, a subdivision of the State (a county) sued the State.  Id. Â¶15.  The county sought a declaration that it was not required to provide the State with space in a courthouse but, if it was so required, that the State was obligated to pay the county for that space.  Id. Â¶3.  This Court dismissed the suit, concluding that â[c]ounties cannot sue their creators.â  Id. Â¶15.
[Â¶30.] The State correctly points out that in rendering that decision this Court discussed sovereign immunity and stated â[t]he State cannot be sued for declaratory relief.â Id. Â¶16.  However, that language must be considered in the context of the Courtâs holding that counties, as creatures of the State, may not sue their creator.  Furthermore, we have recently noted that Pennington County is distinguishable because the county was attempting to obtain a declaratory ruling to obligate the State to pay the county money for the Stateâs use of the Courthouse.  Dakota Sys., 2005 SD 27, Â¶8, 694 NW2d at 27-28.  Considering that attempt by the county to impose an obligation on the State treasury, the holding of Pennington County is limited to county suits seeking monetary relief from the state treasury.  Certainly, the Pennington County dictum on sovereign immunity may not be extended to suggest the rather novel notion that states are generally immune from suits for declaratory relief.  On the contrary, as previously discussed, âa declaratory judgment action attacking the constitutionality of a statute or seeking relief from an invalid act or an abuse of authority by an officer or agent is ... not prohibited by principles governing sovereign immunity.â Id. Â¶9, 694 NW2d at 28 (citations omitted).  To the extent Pennington County may be interpreted otherwise, we limit its reach.
[Â¶31.] In this case, Nelson only sought an interpretation of the excise tax statutes as they apply to its prospective sales of automobiles.  Nelson neither sought a monetary judgment nor a refund of taxes that would be paid from the state treasury.  Furthermore, the action did not attempt to control or impose affirmative action upon a state official that was allegedly acting within the scope of his legal authority.  Rather, this action only sought a declaration concerning the applicability of the excise tax to motor vehicles that were returned or repossessed before installment sale contracts were completed.  That question only required the circuit court to determine whether the Secretary of the Department of Revenue and Regulation was acting without legal authority in imposing that tax.  Because such actions are not precluded by sovereign immunity, Nelsonâs declaratory judgment action was not barred.
[Â¶32.] Reversed and remanded.
[Â¶33.] GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, concur.
[Â¶34.] SABERS, Justice, concurs specially. SABERS, Justice (concurring specially).
[Â¶35.] I agree with the holding of this case: Nelsonâs declaratory judgment action against the State of South Dakota was not barred by sovereign immunity and Nelson was entitled to a declaration concerning the applicability of the excise tax to motor vehicles returned or repossessed before installment sale contracts were completed. This holding is completely within the power of courts to provide declaratory relief as provided in 1925 by the South Dakota Legislature in SDCL 21-24-1.[17]
[Â¶36.] I challenge the implication in paragraphs 13 and 14 that a Departmentâs declaratory process could be intended to be exclusive, mandated, or required as the sole means of relief for all the reasons stated herein.
[Â¶37.] In addition, we should overrule Pennington County rather than simply âlimit its reachâ because, as I stated in my dissent therein, it was âinconsistent and . . . wrongâ on the issue of jurisdiction.  Id. at 134.
[1].         SDCL 32-5B-1 (2004) provides: In addition to all other license and registration fees for the use of the highways, a person shall pay an excise tax at the rate of three percent on the purchase price of any motor vehicle, as defined by Â§ 32-3-1 or 32-5B-21, purchased or acquired for use on the streets and highways of this state and required to be registered under the laws of this state.  This tax shall be in lieu of any tax levied by chapters 10-45 and 10-46 on the sales of such vehicles.  Failure to pay the full amount of excise tax is a Class 1 misdemeanor. [2].         We have not been asked to determine whether the incidence of this tax is imposed upon the buyer or seller, and we express no opinion on that issue. [3].         Nelson contends that if:
taxes [are] assessed on that portion of the purchase price [of] an installment contract that a motor vehicle retailer never actually receives, whether due to return or default, the retailer may be subject to double or triple taxation on the full contract price for the same vehicle, despite only ever having actually âreceivedâ a small fraction of the contract price for each sale. [4].         In Agar I, the Agar School District closed its high school, and the South Dakota Legislature enacted a statute that required school districts without a high school to reorganize its school district or adjust its taxation.  527 NW2d 282,283.  Agar subsequently decided to re-open its high school and sent a budget with the needed property tax levy to the Sully County Auditor.  Id.  Several taxpayers, the Agar School District, and the Board of Education filed suit to declare the additional tax void.  Id. at 284.  The declaratory action was permitted.  Id. at 289. [5].         ARSD 64:01:01:09 further provides: A hearing on a petition for declaratory ruling may be held upon ten days written notice to all parties.  The hearing must be public; testimony must be recorded on magnetic tape or by other equivalent means.  At the request of any person, testimony given at such a hearing must be transcribed.  The transcription expense must be borne by each person requesting a transcript. Parties may make their own provisions to have court reporters present at the hearing.  Briefs may be filed by interested parties as the secretary may direct. [6].         But cf. infra note 9 (explaining that when the first exhaustion doctrine, involving the timing of judicial review of an administrative action is at issue, an administrative appeal statute limits the utilization of judicial relief). [7].         SDCL 10-59-17 provides: A taxpayer seeking recovery of tax, penalty, or interest imposed by the chapters set out in Â§ 10-59-1 shall follow the procedure established in this chapter.  No court has jurisdiction of a suit to recover such taxes, penalty, or interest unless the taxpayer seeking the recovery of tax complies with the provisions of this chapter. [8].         SDCL 10-59-20 provides: No court may restrain or delay the collection and payment of a tax, penalty, or interest provided for in this chapter.  A taxpayer shall pay the taxes when due and may seek recovery as provided in this chapter. [9].         Agar II did, however, recognize the exception when administrative action has taken place and the exhaustion question involves the timing of judicial review.  Agar II noted that when there has been administrative action and there is no request for a refund, âappeal statutesâ (from the administrative action) are an exclusive remedy.  Agar II, 1997 SD 31, Â¶15, 561 NW2d at 323.  âOur prior holdings on taxpayer actions âstand for the proposition that where there is a remedy by appeal, that remedy must be followed, rather than actions in equity or at common law.ââ  Id. (citation omitted).  Thus, when a remedy by appeal is available following administrative action, an action for declaratory judgment is not available. [10].       See SDCL Ch. 5-18 (governing public contracts awarded on competitive bids and defining public corporation to include âthe stateâ); SDCL 25-5-15 (governing parental liability for willful acts and stating that a public corporation includes the âState of South Dakotaâ); SDCL Ch. 37-28 (governing foreign trade zones and defining public corporation to include âthis stateâ); SDCL Ch. 43-41B (governing unclaimed property and defining a person as a âstate or other governmentâ); SDCL Ch. 49-34A (governing gas and electric utilities regulation and defining person to include âany of the federal, state and local governmentsâ). [11].       See Hoiengs v. County of Adams, 245 Neb 877, 889, 516 NW2d 223, 234 (1994) (concluding that the word âpersonâ âis broad enough to include the state or any subdivision thereofâ); Meyerkorth v. State, 173 Neb 889, 893, 115 NW2d 585, 588 (1962) (stating that â[d]eclaratory judgment proceedings have frequently been employed to determine questions as to the construction or validity of statutesâ in a case involving a declaratory judgment brought against the state of Nebraska as well as the Stateâs Commissioner of Education and the County Superintendent); City of Lincoln v. First Natâl Bank, 146 Neb 221, 224, 19 NW2d 156, 158 (1945) (concluding that the term âpersonâ as âused in the declaratory judgment act is broad enough to include the state or any subdivision thereofâ); State ex rel. Smrha v. General Am. Life Ins. Co., 132 Neb 520, 272 NW 555, 558 (1937) (stating that the word âpersonâ in the Declaratory Judgment Act includes the state); St. Paul Fire & Mar. Ins. Co. v. State, Depât of Nat. Res., 25 Ohio Misc. 26, 29-30, 265 NE2d 814, 817-18 (1970) (stating that âthe statute requires that all affected persons be joined. No exception for the state or a county is mentioned.  While the state is not included in the definition of âpersonâ ... neither is âcounty.â  Yet courts have held counties amenable to compulsory joinder in declaratory judgment actions ... and though the state has not been compelled to join in any previous case known to me, yet reason dictates that they be compelled in an appropriate case to satisfy the statutory dictate that all persons having affected interests be presentâ); Pike v. Allen Intâl Ltd., 287 Or 55, 60 n3, 597 P2d 804, 807 n3 (1979) (noting âthat courts in other states construing the Uniform Declaratory Judgments Act have held the word âpersonâ to include states, state agencies, and state subdivisions); and Anderson, Actions for Declaratory Judgments, 349, Â§ 179 (2d ed 1951)). Although one court concluded that the word âpersonâ did not include a state or political subdivision based on general rules of statutory construction, see Bayshore Sanitary Dist. v. San Mateo County, 48 CalApp2d 337, 119 P2d 752 (1941), this reasoning was reversed by the California Supreme Court.  It concluded that where âno impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist and the Legislature may properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language only.â  Hoyt v. Board of Civil Serv. Commârs of City of Los Angeles, 21 Cal2d 399, 402, 132 P2d 804, 806 (1942) (citation omitted). [12].       See Parks, 2004 SD 27, Â¶1, 676 NW2d at 825 (declaratory judgment against the Secretary of the South Dakota Department of Game, Fish and Parks to determine the publicâs right to use certain inland lakes); Boever, 1997 SD 34, Â¶Â¶4-6, 561 NW2d at 311 (declaratory judgment against the South Dakota Board of Accountancy and the Chairman of the Board to determine if a statute allowing the Board to promulgate rules regulating the field of accounting was an unconstitutional delegation of powers); Reis, 1996 SD 75, Â¶1, 550 NW2d at 79 (declaratory judgment against state officials in their official capacities to challenge the constitutionality of a statute that allowed hunting, fishing, and trapping on certain easements); South Dakota Physicianâs Health Group v. State By and Through Depât of Health, 447 NW2d 511, 512 (SD 1989) (declaratory action brought against the state to determine the scope of a statute); Wyatt v. Kundert, 375 NW2d 186, 189-90 (SD 1985) (declaratory judgment brought against the Secretary of State and Attorney General to determine the constitutionality of a nuclear waste statute); Dorian, 297 NW2d 175, 176-77 (SD 1980) (declaratory relief against the Director of Bureau of Vital Statistics and the Secretary of Health in their official capacities to determine whether the Bureau acted unlawfully when it amended a birth certificate rather than issuing a new one). Declaratory relief against the state has also been approved to challenge an agencyâs rules.  Homestake Min. Co. v. Board of Envtl. Protection, 289 NW2d 561, 561-62 (SD 1980). [13].       We acknowledge the contrary dictum in Pennington County stating: Under SDCL 21-24-2, the State does not meet the definition of a person because South Dakota is a state, not a person, partnership, joint stock company, unincorporated association, society or a municipal, public or other corporation of any character.  Since the State is not a person, the State is not a proper party and the trial court did not have jurisdiction to enter declaratory relief in favor of the county. Pennington County v. State ex rel. Unified Judicial Sys., 2002 SD 31, Â¶16, 641 NW2d 127, 132.  However, considering South Dakotaâs long history of permitting such actions, the substantial authority not discussed in Pennington County, and the required liberal construction of the Act, we conclude that the State is a âpersonâ within the meaning of the Act.  To the extent contrary dictum is expressed in Pennington County, it is overruled. [14].       Sovereign immunity âwas well established in English law [where] the Crown could not be sued without consent in its own courts.â Cromwell v. Rapid City Police Depât, 2001 SD 100, Â¶12, 632 NW2d 20, 23-24 (quoting Alden v. Maine, 527 US 706, 715, 119 SCt 2240, 2247, 144 LEd2d 636, 654 (1999)). [15].       âThe Legislature shall direct by law in what manner and in what courts suits may be brought against the state.â  SD const art III, Â§ 27. [16].       See also Ex parte State Depât of Human Res., 2004 WL 2128979, *4 (AlaCivApp) (concluding that sovereign immunity âdoes not protect a state officer or employee in âa suit to compel the performance of a legal duty, a suit to enjoin the enforcement of an unconstitutional law, a suit to compel performance of a ministerial act, or a suit brought under the Declaratory Judgments Act.ââ Rather, ââ[a]ctions brought under the Declaratory Judgments Act ... seeking construction of a statute and how it should be applied in a given situationâ are a species of actions that are not âagainst the State,â for purposes of [sovereign immunity]â) (citing Patterson v. Gladwin Corp., 835 So2d 137, 142) (quoting Aland v. Graham, 287 Ala 266, 230, 250 So2d 677, 679 (1971)); Hoyt v. Board of Civil Serv. Commârs of City of Los Angeles, 21 Cal2d 399, 405, 132 P2d 804, 807 (1942) (stating âno invasion of sovereignty is involved. ... The present action for declaratory relief was instituted to obtain an interpretation of the Los Angeles Charter and does not impose liability of any kind upon the cityâ); Doe v. Heintz, 204 Conn 17, 31, 526 A2d 1318, 1326 (1987) (stating that â[s]overeign immunity does not bar suits against state officials acting in excess of their statutory authority or pursuant to an unconstitutional statuteâ); Bunis v. Conway, 17 AD2d 207, 208, 234 NYS2d 435, 437 (quoting Dun & Bradstreet v. City of New York, 276 NY 198, 206, 11 NE2d 728, 732) (concluding that a declaratory judgment action is allowable âwhere a constitutional question is involved or the legality or meaning of a statute is in questionâ). [17].       SDCL 21-24-1 provides: Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declaration shall have the force and effect of a final judgment or decree. (emphasis added).