ZINTER, Justice
(concurring in result).
[¶ 28.] The principal allegation in the underlying school funding litigation is that the Legislature is failing to perform its duty of appropriating sufficient general funds, derived from taxation, to maintain a thorough and efficient system of schools as required by article VIII, section 15 of the South Dakota Constitution. The plaintiffs in the underlying litigation do not allege any improper use of the two educational trust funds that were created by article VIII, sections 2 and 3 and are relied upon by the majority. See supra ¶¶ 6, 8-15. Therefore, I cannot join the majority’s adoption of a theory of standing that is based upon a trust beneficiary’s right to appear in actions concerning the use of the beneficiary’s trust funds. Instead, I would apply a similar but more limited standing exception than that recognized by the other courts that have considered school funding litigation.
[¶ 29.] There is no dispute that, generally, governmental subdivisions do not have standing to sue their creator, the state. See Edgemont Sch. Dist. 23-1 v. SD Dep’t of Revenue, 1999 SD 48, ¶¶ 13-16, 593 N.W.2d 36, 39-40. The school districts, however, argue that they have standing under the public interest exception to the general rule. The question of standing under the public interest exception is a question of first impression in this jurisdiction. Until today, we have applied the general rule disallowing standing to school districts as governmental subdivisions, but we have also acknowledged the exceptions. Id.
[¶ 30.] A limited exception is justified in this case for three reasons. First, local school districts have a unique constitution *326 al role in both providing and financing K-12 education under article VIII of the South Dakota Constitution. Second, on appeal, the school districts have narrowed the relief they seek in the underlying litigation to that of pure declaratory relief to determine the meaning of the parties’ constitutional obligations.[5] Finally, all parties agree that this is an important public interest question. Under these circumstances, we should now adopt a limited standing exception for schools when they seek pure declaratory relief to determine the meaning of the constitutional provision under which they must provide a public education.[6]
[¶ 31.] I would not, however, recognize the broad public interest standing exception adopted in many of the school districts’ cases. Rather, Washakie County Sch. Dist. No. One v. Herschler, 606 P.2d 310, 317-18 (Wyo.1980), and a restrictive reading of Seattle Sch. Dist. No. 1 of King County v. State, 90 Wash.2d 476, 493-94, 585 P.2d 71, 82 (1978), provide the most appropriate analysis. In Washakie County, the Wyoming Supreme Court recognized standing because schools themselves are tangibly injured if prevented from performing their constitutionally required duty to provide the important governmental function of education:
Educating the youth of our state is an important function performed by our state government. Our constitution ... plainly expresses the commitment of a free people to the value of a thorough education. The school districts and the members of school boards are charged with the responsibility of providing education to the children of Wyoming and are tangibly injured if the statutes which guide their hands disenable them from so providing.
606 P.2d at 317.
[¶ 32.] Like Wyoming, the South Dakota Constitution makes local school districts an integral part of financing and providing a thorough and efficient system of common schools. Article VIII, section 15 imposes a joint Legislature-local school district duty to finance schools: the legislative obligation through general taxation and the local school districts’ obligation through property taxation. And, annual legislative funding together with property taxation provides the bulk of the revenue necessary for schools to fulfill their constitutional obligation of providing an adequate education. Therefore, as the Washington Supreme Court concluded, the interest of the schools is sufficiently within the zone of interest recognized by Washington’s analogous education clause to afford standing.
[I]t is clear the District has standing to challenge the constitutionality of the school financing system. The interests *327 of the District are not theoretical; they involve actual financial constraints imposed upon the District by the challenged system itself. In short, the interests sought to be protected by the District are within the zone of interest either regulated by the challenged regulations and legislation or by [the Washington Constitution’s analogous education clauses.] Under these circumstances it would be unreasonable to deny standing to the District which, far from being a nominal party, stands at the very vortex of the entire financing system.
Seattle Sch. Dist. No. 1, 90 Wash.2d at 498-94, 585 P.2d at 82.[7]
[¶ 38.] In the case before us today, the issue of standing arose in a declaratory judgment action in which the interests at stake involved the joint school district-legislative obligation to provide an adequate public education. The school districts specifically alleged that they were under threat of sanctions for failure to meet state-imposed standards of educational achievement.[8] They further alleged injury to their ability to meet state and constitutional requirements. Under those circumstances, even the jurisdictions that strictly apply the general rule barring governmental subdivision challenges to legislative decisions recognize an exception. The exception applies when schools seek an interpretation of the law they are required to implement, but also allege that by their very compliance, they will be forced to violate a constitutional provision. See City of New York v. State, 86 N.Y.2d 286, 292, 631 N.Y.S.2d 553, 655 N.E.2d 649, 652 (1995) (citing Matter of Jeter v. Ellenville Cent. Sch. Dist., 41 N.Y.2d 283, 287, 392 N.Y.S.2d 403, 360 N.E.2d 1086, 1088 (1977)) (additional citation omitted) (concluding that the school board had standing to seek a declaration interpreting the meaning of laws governing the right to a free public education, but they did not have the substantive right to challenge those laws).
[¶ 34.] As previously indicated, at oral argument in this case the school districts limited their request for relief, stressing that standing was appropriate as they should be entitled to seek a determination of the “meaning” of article VIII, section 15. See supra note 5. Considering this limited question, considering the unique constitutional status and duties of schools regarding K-12 education, and considering the agreement that the underlying issue is a matter of great public importance, I agree with the previously cited authorities holding that schools have standing to seek *328 declaratory relief under the public interest exception. It must, however, be emphasized that such standing should only be recognized at this stage of the proceeding, and then only for the limited question of interpreting and determining the meaning of the education clauses and statutes.[9] To this extent, I concur in result.
[¶35.] The majority’s standing exception is based on a theory of trust law; ie., that a trust beneficiary has standing when asserting a claim of “right” to trust funds. See supra ¶ 6 (stating: “To establish standing, the school districts rely on provisions in the South Dakota Constitution that directly and expressly accord school districts rights to certain funds”) (emphasis added). The majority relies on case law and constitutional provisions recognizing the school districts’ direct and express rights in two trust funds. The first is the perpetual trust fund established by article VIII, section 2, which is funded from the sale of public lands, escheated property, and gifts. The second is the trust for collected fines established by article VIII, section 3. See supra ¶¶ 8-13 (discussing the perpetual trust fund) and supra ¶ 14 (discussing the proceeds of fines).
[¶ 36.] School districts do not, however, seek relief in the underlying litigation for any act or omission with respect to these two existing trust funds. Instead, according to the Third Amended Complaint, the school districts seek a larger future legislative appropriation of general funds through general taxation under the article VIII, section 15. Critically, that constitutional provision leaves some discretion to the Legislature, and it certainly has not created a trust fund. Article VIII, section 15 merely provides that the Legislature shall “make such provision by general taxation [which shall with other funds[10]] secure a thorough and efficient system of common schools throughout the state.”
[¶ 37.] Consequently, article VIII, section 15 — the focus of the underlying litigation — does not provide school districts with any direct or express right to any trust *329 fund, and it certainly does not provide school districts with trust rights in the funds they seek: future increased appropriations. After all, the Legislature could, as it did in 1996 after the last school funding litigation, completely repeal and adopt a new method of funding K-12 education. See 1996 Session Laws ch 69, “An Act to revise and repeal certain provisions relating to state aid to education.” Therefore, although Schelle v. Foss, 76 S.D. 620, 83 N.W.2d 847 (1957) and State v. Ruth, 9 S.D. 84, 68 N.W. 189 (1896) support the theory that school districts would be injured parties with standing if the trust funds in article VIII, sections 2 and 3 were not being used in accordance with constitutional requirements, that is not the allegation in the underlying litigation. For that reason, school district standing based on a trust beneficiary’s “rights” to trust funds has no application in this case.[11]
[¶ 38.] KONENKAMP, Justice, joins this special writing.

. At oral argument, counsel for the school districts stated that in the underlying litigation, the plaintiffs are "seeking an interpretation of article VIII, what does it mean that ... the State is to adopt all suitable means to provide an education? Are the school districts entitled to have sufficient funds to provide an adequate education? What does an adequate education mean?”

. Although the State relies on authorities finding no standing for governmental subdivisions, those authorities are distinguishable as they either apply to other governmental subdivisions having no specific constitutional duty with respect to the issue in litigation, or the recognized standing exceptions are inapplicable or not discussed. See e.g. Denver Ass'n for Retarded Children, Inc. v. Sch. Dist. No. 1 in City and County of Denver, 188 Colo. 310, 535 P.2d 200 (1975); Lobato v. State, 216 P.3d 29, 2008 WL 194019 (Colo.App.2008); Bd. of Supervisors of Linn County v. Dep’t of Revenue, 263 N.W.2d 227 (Iowa 1978); East Jackson Pub. Sch. v. State, 133 Mich.App. 132, 348 N.W.2d 303 (1984); New York State Ass'n of Small City Sch. Dist., Inc. v. State, 42 A.D.3d 648, 840 N.Y.S.2d 179 (3d Dept.2007).

. Although I agree with the Washington court’s view of school standing in light of the school districts' constitutional obligation to provide education, I would not adopt the Washington court's view of standing for other governmental entities. The State's authorities from other jurisdictions overwhelmingly demonstrate that, absent the constitutional zone of interest that state constitutions provide to schools, other governmental entities, as creatures of the legislature, have no standing. South Dakota has adopted this view. For example, we have stated that:
Counties and other municipal corporations are, of course, the creatures of the Legislature; they exist by reason of statutes enacted within the power of the Legislature, and we see no sound basis upon which a ministerial (or, for that matter, any other) office may question the laws of its being. The creature is not greater than its creator, and may not question that power which brought it into existence and set the bounds of its capacities.
Edgemont Sch. Dist., 1999 SD 48, ¶ 15, 593 N.W.2d at 40 (quoting Bd. of Supervisors of Linn County, 263 N.W.2d at 232 (quoting C. Hewitt & Sons Co. v. Keller, 223 Iowa 1372, 275 N.W. 94, 97 (1937))).

. See, e.g., SDCL §§ 13-3-62, 13-3-69, 13-6-2, 13-13-11.

. In the underlying litigation, the circuit court dismissed all claims except those seeking declaratory relief. That litigation has not been finalized and it is not known if the dismissed claims may be the subject of an appeal. In any event, in light of the Schools' appellate limitation on their request for relief, see supra note 5, it should be understood that today's decision is no authority for the proposition that public schools have standing to take the often utilized step of also seeking enforcement of a declaratory ruling, which might, for example, include a request for monetary or other affirmative relief against the State. See Dan Nelson Auto., Inc. v. Viken, 2005 SD 109, ¶¶ 30-31, 706 N.W.2d 239, 251-52 (restating that declaratory relief is unavailable to governmental subdivisions seeking monetary relief from the state treasury).
For the same reason, today’s decision should not be understood to mean that school districts have standing to seek the other relief they initially sought in the underlying litigation; namely,
That the [circuit] court issue appropriate writs of mandamus, writs of prohibition, and/or interim and permanent injunctive relief to bring defendants into compliance with article VIII of the South Dakota Constitution, to prohibit the defendants from administering, enforcing and/or funding those provisions of the public school financing system that are unconstitutional, and to remedy the continuing violation of plaintiffs’ constitutional education rights; and That the court retain jurisdiction and maintain judicial oversight to assure that the Legislative and Executive departments act appropriately to correct the constitutional inadequacies of the public school finance system that presently exists in South Dakota.
Third Amended Complaint, 83.

. Although article VIII, section 15 also provides that the Legislature shall make provision for the school corporations to levy such additional local taxes, there is no allegation in the underlying complaint that the Legislature has failed to authorize the school districts to levy local taxes for their schools.

. There is one limited exception. To the extent the underlying plaintiffs allege inappropriate use of the article XII, section 6 Education Enhancement Trust Fund, the majority’s trustee beneficiary theory could apply. That does not, however, appear to be the focus of the underlying litigation.